BELL v. MacKINNON et al.

(Circuit Court of Appeals, Second Circuit. November 7, 1906.)

No. 138.

1. PATENTS—SUIT FOR INFRINGEMENT—DEFENSE OF ANTICIPATION.
  The defense of anticipation will not be considered in a suit for infringement of a patent where it is supported by the introduction of a number of prior patents for complicated machinery without any explanatory testimony.

2. SAME—INFRINGEMENT—KNITTED FABRIC.
  The Bell patent, No. 599,438, for a knitted fabric, if conceded patentable novelty, is of very narrow scope, and is not infringed by a fabric which has neither the groups of short and long loops of plush thread of the specification, nor the short and long loops of the claim.

Appeal from the Circuit Court of the United States for the Northern District of New York.

Appeal from decree, sustaining the validity of the second claim of complainant's patent, No. 599,438, granted February 22, 1898, to Winslow M. Bell, for improvement in knitted fabrics, and finding infringement and granting an injunction.

Milton E. Robinson, for appellants.
J. E. H. Hyde, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The specifications and drawings of the patent in suit are indefinite and incomplete, anticipation is claimed, but the defense is only suggested by injecting a large number of prior patents into the record without any explanatory testimony, and, apparently for this reason, the court below has filed no opinion, except a statement that the claim in suit is valid and infringed. If an examination of the prior art were necessary to the decision of the case, we should not sustain the defense of anticipation upon such mere production of patents for complicated combinations of machinery. It is evident, however, from the file wrapper, the language of the specifications, hereafter quoted, and the testimony, that the patent is a narrow one. It concerns knitted fabrics having diversified patterns. The 31 claims in the original application were divided between claims for methods for forming knitted fabric and for the fabric itself. After repeated rejections and amendments, the claim in suit was inserted and allowed for a special construction of fabric.

The patent' is printed with two claims. The court below held the first of these claims void. This claim was, in fact, erased by the applicant before the issue of the patent, so that the patent contains but one claim—the claim in suit.

Said claim is as follows:

"A fabric consisting of body-threads, and two or more plush-threads, said plush-threads engaging with the body-threads in alternately short and long loops, the long loops of one plush-thread lying over the short loops of the other plush-thread and vice versa, and all of said long loops lying higher than the short loops above the body portion of the fabric, substantially as described."

The specification states, inter alia, as follows:

"My invention relates to improvements in knitted fabrics, in which certain cords or threads, hereinafter designated 'plush-threads,' are so knitted into the body of the fabric as to form definite contrasts, figures, or designs, either in color, shape, relief, material, or all four, and allow of being suitably napped thereafter, if desired, without injury to the body fabric. * * * Some patterns, such as straight and diagonal stripes, can be produced by a slight alteration in the arrangement of parts of the present plush-machines. I attain these objects in the following manner: * * * My improved fabric differs from those previously used in having a plush-thread surface, which consists of alternating groups or series of loops of said plush-threads, some of which loops are shorter than the others, such groups being arranged so as to be intermittently and recurrently visible and invisible, the relation of such groups to each other and the number of loops in each group being varied at pleasure, whereby various patterns or designs may be formed upon the surface, as desired. My new method of making such a fabric consists in interlacing plush-threads through loops of the binding-threads of said fabric and in so arranging the plush-threads that they will appear above the surface of the fabric in groups or series of loops, each group alternating with another group of a different height or length; for instance, one group, Z, composed of long high loops and a neighboring group, Y, composed of short low loops, and the groups being separated from each other by short loops of plush-threads tightly interlaced with the body fabric.

"Referring to Fig. 1, A represents the binding-thread composing the foundation texture or body of the fabric, such as knit shirting or hosiery, for example, and which may be of any suitable material. Into this the plush-thread, B, which may be of any suitable material and color, is interlaced or knit, as at e, in such a manner as to form a long loop raised considerably above the general surface of the fabric. These loops may be knit in series or groups of two or more, as may be desired. At E this plush-thread is interlaced or knit in such a manner as to form a short loop, B', raised only slightly above the body as compared with the long loop. These short loops may be also knit in series or groups. In this figure there is a group of three long high loops and one of four short loops of medium height and short loops, E", tightly interlaced with the body fabric, and between each of the long or short loops. It will be seen that this method of knitting will permit of infinite varieties of design as regards the outline of the figure thus formed in relief by the difference in height of the respective loops or series of loops. At the same time, if desired, a second plush-thread, C, which may be of different color or material, or both, may in the same way be interlaced or knit into the body, A, and loops, BB', so as to form a similar series or group of short loops, C, under the long loops formed by the plush-thread, B, and in a similar manner several such threads may be knit so as to produce several series or groups of different colors and materials."

The patentee proposed to produce his fabrics "by a slight alteration in the arrangement of parts of the present plush-machines." The language of the specifications indicates that he thought that the novel fea-

ture of his invention consisted in the formation of an improved fabric with a novel pattern surface by means of groups of floated loops separated from each other by short loops, not floated, but "tightly interlaced with the body of the fabric;" and the patentee evidently intended that this fabric should comprise groups of long loops followed by groups of shorter loops extending transversely across the fabric, end to end; that is, in the lines formed by the loops themselves. This is made clearer by the patent drawings, which show a group of long, high floated loops thus alternating with a group of short, lower floated loops and separated by tying-in loops. The alternative construction, whereby an additional thread of different color might be introduced, need not be here considered. The claim in suit, however, does not answer to the group invention as described in the specifications. It is confined to "short and long loops; the long loops of one plush-thread lying over the short loops of the other plush-thread," etc. In view of the patentee's admission that his fabric differed from those of the prior art in a "surface which consists of alternating groups," etc., and of the references cited by the Patent Office, as shown by the file wrapper, and of the holding of the examiner that fabrics having alternating long and short loops were common in the art, it is doubtful whether any novelty could be claimed for the patented construction, except when combined in groups. But even if the claim as allowed be sustained for the precise construction shown, and even if, in violation of the language of the specification and of the constructions shown in the drawings, it be extended to embrace a fabric wherein there are no groups, and if, as claimed by complainant, the single long loop in one row of the fabric is to be understood as lying over or above the short loop in another row, we are unable to see how infringement by defendants could be predicated thereon.

In complainant's patent, the loops of plush-threads where shown in the drawings as floated over eight chains of body stitches before engaging the body-threads, are called "long loops;" where thus floated over four chains of stitches they are called "short loops;" while the tying-in loops are shown as not floated at all, and are described as "tightly interlaced with the body fabric." The patentee, in his testimony, defines these tying-in loops as "the small stitch * * * being the part of the plush-thread which is attached to the body-thread."

Complainant's witness, Wood, testifies as follows:

"X-Q. 79. In complainant's patent, as you look at it, the novelty is the arrangement of the long and short floated plush thread loops, and the short floated plush thread loops are just as material and important in the construction as the long loops, are they not? A. They are. * * *

"X-Q. 117. The tying-in loops, E, of Fig. 5 of the drawings of the patent show loops that lie down the fabric instead of up the fabric, do they not? A. We don't call that a loop. The yarn has to go around the needle to be tied in, and that is the place where it goes around the needle.

"X-Q. 118. The patent says 'short loops, E.' Where do these appear in the drawings of the patent? A. This E in Fig. 5 that you speak of, in the patent it is called a loop, but it has no bearing on the face; it simply shows where it goes around the needle and is tied in the body thread. It would show more on the back of the body thread than it would on the face.

"X-Q. 119. Then, as you understand it, 'short loops E' tightly interlace with

the body fabric and between each of the long or short loops in the specification refers to loops, 'E,' there being no 'E' to be found on the drawings. Is that right? A. That is the way I understand it. * * *

"X-Q. 168. If the long loops lop over and lie on top of the short loops, as you have stated, the short loops serve to act as a padding to give greater elevation to the long loops, do they not? A. Yes.

"X-Q. 169. The loops that are tightly interlaced with the body fabric do not serve that end to much purpose, do they? A. They do not."

Defendants' fabric is composed solely of loops which correspond to complainant's short loops and tying-in loops. Or, if the short loops be considered as the equivalent of complainant's long elevated loops, then there are no short loops whatever, in the sense of the patent, because none of the remaining loops are "raised above the body fabric" or floated on any chains of stitches. They are merely "tightly interlaced with the body of the fabric."

In order to support his contention complainant is forced to differentiate two such tying-in loops lying side by side and identical in size, construction, and location, and to call one a short loop and the other a tying-in loop, and to further designate what corresponds to complainant's short loop as a long loop. Inasmuch, therefore, as defendants have neither the groups of short and long loops of the specifications, or the short and long loops of the claim in suit, it must be held that there is no infringement.

The decree is reversed, with costs, and the cause is remanded to the court below, with instructions to dismiss the bill.