WILLIAMSON v. ELECTRIC SERVICE SUPPLIES CO.

(District Court, E. D. Pennsylvania.   October 9, 1916.)

No. 1171.

1. PATENTS ⟨⟩112(1)—ISSUANCE—PRESUMPTION.

The issuance of a patent carries with it a presumption of validity.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 162; Dec. Dig. ⟨⟩112(1).]

2. PATENTS ⟨⟩69—ANTICIPATION—PRIOR USE AND PUBLICATION.

For prior publication to invalidate a patent, the invention described in the publication must be identical in all respects with that whose novelty it contradicts, and the same idea of means in the same stage of development as that which the patent has later embodied must be communicated to the public.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 84; Dec. Dig. ⟨⟩69.]

3. PATENTS ⟨⟩81—VALIDITY—PRIOR USE.

In determining whether a patent is void because of prior use for more than two years before application, where it is claimed that the use was not public, but was for the purpose of perfecting an incomplete invention by tests and experiments, the patentee's proof of that fact, the period for the use having been established, should be clear and unequivocal.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 104; Dec. Dig. ⟨⟩81.]

4. PATENTS ⟨⟩328—VALIDITY—PRIOR PUBLIC USE AND PUBLICATION.

The Ramsey patent, No. 575,733, for an electric signal system for electric railroads, which by means of lights indicated the presence of cars between the several blocks established, held, in view of the patentee's long delay in asserting his rights, invalid, because of publication two years before application, as well as public use for more than two years before application.

In Equity.   Bill by James E. Williamson against the Electric Service Supplies Company.   Bill dismissed.

J. F. Shrader, of Philadelphia, Pa., and John H. Roney, of Pittsburgh, Pa., for plaintiff.

Charles N. Butler, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge.   The bill charges infringement of the Ramsey patent, No. 575,733, issued January 26, 1897, upon an application filed August 9, 1894.   The patent contains a single claim, to wit:

"In a signal system for railways, a trolley or feed wire having a branch at each station, a line wire having a signal and a terminal switch at each station, and a return circuit; the switches co-operating with the return and branch circuits alternately; substantially as and for the purpose specified."

The answer denies the validity of the patent because the device was described in a printed publication more than two years prior to filing the application and was in public use and on sale in this country more than two years prior to the application.   Infringement is denied.

[1] The defendant offered in evidence three prior patents under the defense of the prior art, the dates of issue of which, respectively, are

Hadden, March 6, 1883; Cheney, February 16, 1892; Jaggard, April 5, 1892. None of them, standing alone, anticipates the claim of the patent in suit, and no explanatory testimony was offered to overcome the presumption afforded by the issuing of the Ramsey patent. Bell v. McKinnon, 149 Fed. 205, 79 C. C. A. 163.

[2] In support of the defense of prior publication, the evidence of the description of the plaintiff's invention published in the Street Railway Journal in October, 1891, 2 years and 10 months prior to Ramsey's application, is sufficient to invalidate the patent if it comes within the rule cited by Judge Acheson in Hanifen v. Godshalk Co., 84 Fed. 649, 28 C. C. A. 507, as laid down in Robinson on Patents, vol. 1, § 329:

"The invention described in the publication must be identical in all respects with that whose novelty it contradicts. The same idea of means in the same stage of development as that which the inventor of the later has embodied must be thereby communicated to the public."

The facts will be considered in their bearing upon the defense of publication and of prior use and prior sale. Ramsey conceived of the invention of the patent in suit during the early part of 1890. At that time he was chief electrician of the Pleasant Valley Street Railway Company and later became superintendent of the road. During the early part of 1890 he began the construction of boxes and the installation of his system on a branch of the Pleasant Valley Street Railway, and, during June or July, 1892, more than two years prior to the application for the patent, the system was installed on the Beaver Valley Railway in the same locality as the Pleasant Valley line. It is claimed by the plaintiff that this use was merely experimental, and that the perfected system, as set out in the patent, was not in use on either of these roads until September, 1892.

[3, 4] In the specification the patentee states:

"My invention relates to systems for throwing or showing signals at two or more points to indicate that a certain block or section of track is occupied by a train or car and that the train or car so signaled must wait until the signaling train or car passes such point."

In the patented device the main conductor of the electric circuit is the trolley wire. From the trolley wire at each end of the section of single track for which the signals are to be provided a branch conductor leads to a binding post. Each of the signal boxes at the respective ends of the single track is provided with lamps in series. A conductor, which is referred to as a line wire, not directly connected with the trolley wire or its branches, connects the series of lamps in the two boxes. A ground wire is provided at each signal box, connecting with the ground line of the main circuit. Points of contact are provided for each branch wire and each ground wire, which may be connected with the line wire by means of a switch arm. When both switches are in contact with the branch wires, or when both are in contact with the ground wires, no current will pass through the line wire, and the lamps are then unlighted. When, however, one switch arm is in contact with the branch wire and the other with the ground wire, the circuit is closed, and the consequent current causes the lighting of the lamps in both boxes. The purpose of the device is to enable

the conductor of a trolley car, by turning the switch at either end, to light the lamps at both ends of the single track upon entering it, thereby warning the conductors of other cars that the single track is occupied, and, upon leaving it, by turning the switch at the other end of the single track to extinguish the lights, so that the conductor of another car entering the section of single track knows that there is no other car upon that track.

The invention described in the specification is for a new and useful improvement in systems for electrical signaling. The essential feature of the improved system is the arrangement of the construction whereby a single line wire conducting through the lamps is, by means of switches, made a part of a circuit connecting through the ground wire at one end and the branch wire at the other end alternately, and whereby, by means of one switch at either station, the current may be turned on or off; lighting the lamps or extinguishing them simultaneously at both ends of the circuit.

It is to be determined, then, whether the invention, as described in the Street Railway Journal and in use prior to August, 1892, was identical with the device set out in the claim of the patent. The plaintiff claims that the system described in the Street Railway Journal and in use upon the Pleasant Valley and Beaver Valley Street Railway lines differed from that described in the patent, in that resistance coils were supplied in the signal boxes used prior to September, 1892, and shown in the illustration published in the Street Railway Journal, and that the lamps in use were arranged in multiple series and so shown in the Street Railway Journal publication; that the resistance coils caused excessive heat in the boxes and destroyed the efficiency of the lamps, and, while the general result was a practical operation of the system, it required further experiment to bring it to a degree of perfection which would make it reliable as a signaling device. In September, 1892, the resistance coils were removed, and the inventor changed the circuits through the lamps from multiple series to series, with the result that the system became reliable and efficient, and later came into general use as the standard system for street railway signals.

If the system in prior use and described in the Railway Journal of 1891 lacks identity with the system described in the patent, it does so only by reason of these differences: First, the presence of resistance coils in the system first described and used, and the omission of resistance coils in the claim and specification and drawings of the patent; and, second, the arrangement of the lamps in prior use and described in the Railway Journal in multiple series and their arrangement in the drawings in the patent in series.

It is undisputed that the system in use upon the Pleasant Valley Railway and the Beaver Valley Railway more than two years prior to filing the application for the patent could be constructed from the publication in the Street Railway Journal by others skilled in the art to which it pertains. The determination of the identity of the description in the Railway Journal and of the system used by the two railway companies with the system described in the claim of the plaintiff's patents must therefore be based upon the determination of the

questions whether the removal of the resistance coils, assuming that the patent is limited to a system without such resistance, or the change from multiple series to series, assuming that the patent is limited to a series arrangement of lamps, embodied invention. The advantage of the absence of the resistance coils, as explained by the plaintiff's witnesses, is that the coils caused excessive heat within the signal boxes, causing short-circuiting, and in some cases resulting in burning up the boxes. The effect of the coil upon the lamps is not clear. It is stated by the witnesses that, when there was an exceptionally heavy load upon the current, the lights would become so dim as to render it difficult to determine whether they were lighted or not. This condition is not by any clear evidence traceable to the presence of the resistance coils, and their presence is explained by the inventor, Mr. Ramsey, as being due to a desire to protect the weak filaments of the lamps, as well as to prolong the life of the lamps by preventing an excessive flow of current through them. The advantage of the series arrangement of lamps, as explained by the witnesses, is that a person turning the switch to light the lamps and, finding that they do not light, is at once apprised of the fact that the system is out of order, and the car enters upon the single track with caution.

The claim of the patent is broad enough to cover an arrangement in series or multiple series, and the only ground upon which the plaintiff can claim that the series arrangement is covered by the patent is the mention of a series of lamps in the specification and a drawing representing a series arrangement.

The palpable fact that the effect of breaking or burning out any one of the lamps will break the circuit is not such a discovery as to entitle the patentee, so arranging the lamps, to the credit of invention. It is plain that any practical electrician, though but slightly skilled in the art, having presented to him an arrangement by which the circuit was conducted through one part of a multiple series, and desiring to have it known when one of the lamps was burned out or broken, would arrange the wiring in series, instead of in multiple series. This is a mere matter of mechanical arrangement, which could be effected by any electrical mechanic, and it cannot be pretended that it required the discovery of an inventor at the period of the alleged experimental use to substitute this arrangement for the one disclosed in the Railway Journal article. So, also, it is with the removal of the resistance coils. It is a mere detail of arrangement, involving nothing but the mechanical skill of an electrician, and not involving invention. If an alleged infringer defended upon the ground that he was not using the invention described in the claim of the patent, because he substituted lamps in multiple series for those in series, or because he used a resistance coil in the circuit, the substitution of one of these mechanical devices for the other would be unhesitatingly rejected as a defense to infringement by manufacture, use, or sale of a system in other respects similar to that covered by the patent.

The plaintiff claims that the use by the railway companies was an experimental use for the purpose of perfecting the invention. The evidence shows that the system used by the Pleasant Valley and Beaver

Valley Companies was practically operative. In fact, it appears that the Beaver Valley Company installed the system upon its line because it knew of its successful operation upon the Pleasant Valley Company's line. The use was for the benefit of the two companies, and it is difficult to perceive how such use for a period of two years and eight months was necessary as experimental use for the purposes of the inventor in perfecting his system. The ingenuity of the patentee and the utility of his invention are apparent, but the law is plain that, where an invention is fully described and made public in such manner that the subject-matter can be constructed from the publication by any one skilled in the art, as in this case, and the subject-matter of the invention is put into practical and public use for a long period of time for the benefit of the user and not the inventor, without any restrictions upon its use, or upon allowing others to use it (and there is no clear evidence in this case that any such restriction was put on either railway company), such publication and prior use cannot be defended upon the ground of a mere change in mechanical details, which may, and perhaps did, add to the efficiency of the system, but which could have been effected by any one having ordinary mechanical skill as an electrician.

"In considering the evidence as to the alleged prior use for more than two years of an invention, which, if established, will have the effect of invalidating the patent, and where the defense is met only by the allegation that the use was not a public use in the sense of the statute, because it was for the purpose of perfecting an incomplete invention by tests and experiments, the proof on the part of the patentee, the period covered by the use having been clearly established, should be full, unequivocal, and convincing." Smith & Griggs Mfg. Co. v. Sprague, 123 U. S. 264, 8 Sup. Ct. 122, 31 L. Ed. 141.

The evidence in this case of experimental use is not to my mind "full, unequivocal, and convincing." The change in arrangement, involving merely mechanical skill, as did the changes in this case, cannot justify the duration of two years and eight months of time in experimentation, unless it is shown that during that time there were active and continued efforts upon the part of the inventor to correct whatever defects may have existed. It is inconceivable that it would not have suggested itself to one skilled in the art to test the effect of removal of the coils and the change in arrangement of the lamps within a shorter time after the commencement of experimental use than two years and eight months. The defense of experimental use for that long period creates the impression of being the result of an afterthought for the purpose of sustaining the validity of the patent. The question of profit to the patentee and of sale is in the circumstances immaterial.

It is conceded by the plaintiff that from 1908 to the time of bringing suit, a few days before the expiration of the patent, the system of the patent was in general public use without license by him on the lines of numerous electrical railways throughout New England and elsewhere. He had ample opportunity, when his attention was called by the defendant in 1908 to the manufacture of similar systems by others, to defend his patent, but took no steps to do so until the present bill was filed. Such acquiescence upon his part in infringement does not add

to the weight of his present claim of experimental use during 1890, 1891, and 1892, nor his present claim that the elimination of the resistance coils and the substituted arrangement of lamps in 1892 were such substantial improvements in the system as to justify the long period of alleged experimental use and the disclosure in the Railway Journal in 1891.

It is unnecessary to pass upon other defenses, as the evidence in the case is sufficient to overcome the presumption of the validity of the patent.

The patent is held invalid, and the bill will be dismissed.