**HYDRAULIC PRESS MFG. CO. v. WIL-
LIAMS, WHITE & CO.**

**No. 8978.**

Circuit Court of Appeals, Seventh Circuit.

Dec. 9, 1947.

H. A. Toulmin, Jr., and D. C. Staley, both of Dayton, Ohio, B. A. Schroeder, of Chicago, Ill., and Toulmin & Toulmin, of Dayton, Ohio, for appellant.

Louis Quarles and David A. Fox, both of Milwaukee, Wis., and Max D. Farmer, of Buffalo, N.Y., for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff appeals from a judgment dismissing its complaint which charged that defendant in the construction and sale of a hydraulic press had used the alleged inventions of Ernst reissue patent No. 18287, dated December 15, 1931, and Ernst reissue patent No. 19694, dated September 10, 1935, in infringement of fifteen claims of No. 18287 and twenty-two claims of No. 19694. Both patents relate to control mechanisms for hydraulic motors. The defenses were invalidity, non-infringement, and that both patents had been improperly issued.

At the trial plaintiff limited its charge of infringement to claims 1, 2, 8, 19, 20 and 22 of No. 18287 and to claims 1, 10, 19, 20, 27 and 36 of No. 19694. The court held the claims in issue invalid, because anticipated by and as lacking invention over the prior art.

The patents involved are in the general field of those which relate to hydraulic motors and presses. The application for No. 18287 was filed December 8, 1926. Claim 22, typical of the others, reads:

"22. The combination with a hydraulic press including a stationary table and a reciprocatory platen movable towards and from the table, of a reversible pump, means forming with the press and pump a hydraulic circuit, controlling means operatively connected with the pump and circuit for effecting movement of the platen towards the table and responsive to the pressure built up in the circuit during said movement of the platen for automatically reversing the pump and the platen irrespective of the position of the platen relative to the table, and means for automatically bringing the platen to rest at the end of a return stroke."

In contending that the court erred in holding the claims invalid for lack of invention, plaintiff relies upon a combination of elements, which it asserts, "cooperate to perform a single and useful result in controlling the movements of a hydraulic press directly through the medium of a reversible variable discharge pump." It insists that at the time the Ernst patents were issued, the art for controlling hydraulic presses was still in its infancy, and consisted of numerous paper patents which did not deal with the control of modern hydraulic presses, and makes the point that the basic concept of Ernst's claimed inventions cannot be found in any one of the prior art references.

From the record it is clear that what Ernst did in No. 18287 was to provide a mechanism—primarily for hydraulic presses—so that a reversible variable discharge pump would control the operating movements of the hydraulic press, i. e., to start closing in response to a manually performed shifting of the control, to continue closing without further intervention of the operator until obstruction of the ram by a work piece causes pressure to rise in the system and thereupon to reverse so that the ram stops its forward movement and starts to retreat, all without intervention of an operator, which retreating movement continues until the ram reaches a predetermined open position whereupon without intervention of the operator the ram comes to rest.

It appears that others prior to Ernst had disclosed hydraulic apparatus which automatically reversed as part of a typical semi-automatic operation, that is, a control mechanism which will cause a machine after being started to operate continuously until the machine is stopped by operation of a stop means which forms a part of the control mechanism, which stop means may either be operated manually or by some mechanical agency in response to the occurrence of a given event. These disclosures were made by parties who were

actively engaged in manufacturing and selling hydraulic equipment. In the consideration of the question involved, we need consider only three prior patents.

The first of these is patent No. 642009 issued to Sellers and Lewis. It was filed July 11, 1895 and issued January 23, 1900. The object of this patent was to operate a hydraulic press by a pump and to govern the movements of the pressing ram automatically or by hand at will so as to attain the greatest exactitude in its work with the greatest rapidity in its operation. It is true, it did not disclose a reversible variable delivery pump to directly effect operation of the platen of the press or a control which operated the press. Sellers and Lewis used a valve shiftable to and from forward and reverse positions to interchange the connection between a pair of lines and sometimes having a neutral position in which the lines are stopped off on one side of the valve and by-passed on the other, but it is evidence of the fact that those skilled in the art had knowledge of the existence of a double acting hydraulic press capable of self reciprocation or regulation by hand, and automatically reversible selectively at the will of the operator.

The second patent, Smith's No. 1552768, filed October 31, 1922 and issued September 8, 1925, had for its object an automatically acting self-contained hydraulic press in which the power stroke of the ram is carried to a predetermined limit, variable at will and terminated automatically. It disclosed both a double-acting and single-acting, self-contained, hydraulic press, a pump and control mechanism capable of delivering fluid at variable rate.

About 1922, designers of hydraulic presses began to incorporate into their designs a pump which would deliver fluid at any desired rate in either direction of flow. In this pump were combined the features of variable and reversible delivery, so that a hydraulic machine could be operated with or without control valves.

The third patent to be considered is Ferris' No. 1813040 filed June 11, 1923 and issued July 7, 1931. It relates to automatic control of hydraulic transmission mechanisms and had for its objects a hydraulic transmission gear by which the operating element may be made to automatically perform a predetermined cycle of operations and "time controlled means for predetermining the operating characteristics of a hydraulically driven tool or analogous element." Ferris used a pump having a control which could be shifted to cause the pump to discharge liquid at different rates in either direction while being driven at a constant speed in one direction only, and disclosed a control arrangement for producing a semi-automatic cycle, which reversed by reversing the pump when ram travel was obstructed and pressure in the system rose.

Plaintiff challenges the finding of the court that Ernst was anticipated by any prior art patent.

The Ferris patent is explained in detail in the record. Ferris, in Figures 1 and 2, disclosed the positions of the parts of his apparatus at three points in a cycle of operations. In his patent we find a reversible variable delivery pump, a hydraulic circuit connecting the pump, a control mechanism to cause a pressing movement of the platen, a return movement of the platen or to stop in neutral position, pressure controlled means to actuate the control mechanism to bring about the return movement of the platen, and automatic means to move the pump into a neutral position to stop.

To start the machine a switch is closed causing the solenoid to trip a latch and permit a cam to rotate a roller which operates a lever which pulls a pump stem which causes the pump to deliver liquid which causes a piston to move upward and the spindle to move downward. During the downward movement of the spindle, the cam rotates in two stages and causes the downward speed of the spindle to be reduced first to a fast feed rate and then to a slow feed rate and then a pin will engage latch and arrest the rotation of the cam to hold the ram on the working stroke. The spindle will continue downward until a collar on the spindle engages the top of the work, which causes the pump pressure to rise high enough to en-

able the piston to trip the latch so that the cam can rotate and move under the roller. This permits the spring to move a control stem inward far enough to reverse the pump. Thus, Ferris' machine is started manually, and automatically reverses on pressure at the end of the working stroke.

Plaintiff insists that there is no separate element, as in Ernst, for moving Ferris' device from the third to the first position. In other words, that there is a difference in the stopped condition of the Ferris machine, and that two distinct segments of the cam, in Ferris, should not be regarded as constituting individual elements satisfying different parts of the claim.

■■ It will suffice to say that an expert witness testified that both devices bring the ram to rest in exactly the same way. In determining the question of infringement, the court is not to judge about similarities or differences by the names of things, but is to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it. Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L.Ed. 935. Perhaps Ernst has improved the means to move the pump into a neutral position, but certainly it performs the same function and accomplishes substantially the same result as the Ferris machine. One does not escape infringement by providing a single element which fully responds to a plurality of elements in the patent. Sears, Roebuck & Co. v. Delta Mfg. Co., 7 Cir., 78 F.2d 745, 747. The converse of this is also true. Bundy Mfg. Co. v. Detroit Time-Register Co., 6 Cir., 94 F. 524, 543, and Knapp v. Morss, 150 U.S. 221, 228, 14 S. Ct. 81, 37 L.Ed. 1059.

■ The point is also made that the spring which shifts Ferris' pump into reverse stroke after pressure attains a predetermined amount is not a "pressure controlled" means for shifting the pump and that Ferris' device is not a hydraulic press. There is no merit to these points. In his specifications Ferris stated that his device relates to automatic control of hydraulic transmission mechanisms for use primarily in presses, and as to the pressure controlled means for shifting the pump, it seems to us that Ernst is readable upon Ferris.

In this state of the record the finding was not clearly erroneous, and we must conclude that the claims in issue are invalid for want of patentable novelty in view of the prior art.

■ We now proceed to consider No. 19694, issued September 10, 1935, on an application filed September 15, 1930. Ernst's patent is for a combination. In its brief, plaintiff admits that the Ernst patent is not for a new machine or for new mechanical elements. True, it has been said that a new combination of old mechanical elements whereby a new and useful result is secured, may be protected by a patent. The claimed invention is the combination of a hydraulic motor provided with a hydraulic circuit for operating the ram of the hydraulic motor in both directions and a control mechanism associated with the hydraulic circuit for controlling the flow of hydraulic fluid from a pump to thereby control the operation of the hydraulic motor or a hydraulic press in much the same manner as in No. 18287. The controls, however, are electrical in nature and are adapted to effect either a semi-automatic or a full and complete automatic operation of the hydraulic motor or press.

Here, again, plaintiff argues that the claims of this patent contain an invention which is not disclosed in any prior art patent. For the purpose of showing the state of the art and that Ernst was anticipated defendant introduced in evidence sixteen patents and asserts that these patents disclose combinations comprising the elements found in the Ernst patent, and contends that in the construction of the press which it sold to The Morris Manufacturing Company it followed the teachings of these patents. It will not be necessary to discuss all of them.

■ Before discussing the claims of plaintiff's patent and the claimed prior art patents, it is well to say that a valid patent cannot issue to any applicant for his alleged invention if it was known or used

by others before his invention or discovery. And a mere combination of a number of old parts or elements is not patentable invention, if the combination of the old parts or elements, in their aggregation, perform or produce no new or different function or operation.

Claims 10 and 27 relate to a control for producing semi-automatic operation. The essence of these claims resides in the control means electrically-operated, pressure-responsive for automatically reversing the ram means when a working stroke has been completed. The claims are without any terminology descriptive of the character of the electrical means and purport broadly to cover whatever may be devised in the way of electrical means for the accomplishment of this purpose.

The Lamb and Fee patent, No. 1932976, filed June 16, 1926 and issued October 31, 1933, covered a metering and filling machine. It disclosed a pressure actuated switch and an electro-magnet for reversing a hydraulic motor so arranged as to execute a fully automatic cycle.

Claims 1 and 19 relate to a control which can be arranged to produce either semi-automatic or automatic operation and claim 36 relates to a control for automatic operation. The Cleveland patent, No. 610524, issued September 13, 1898, covered an electrically controlled valve for hydraulic presses and disclosed the use of a pressure responsive electric switch for effecting reversal of a motor, while, as before noted, the Lamb and Fee patent disclosed a pressure actuated switch and an electro-magnet for reversing a hydraulic motor so arranged as to execute a fully automatic cycle.

Claim 20 relates to a control which can be arranged to produce either reversal on distance (the initiation of a return stroke in response to the press platen reaching a given position during its working stroke) or reversal on pressure (the initiation of a return stroke in response to the pressure of the liquid reaching a predetermined maximum pressure during the working stroke). The Summey patent, No. 1934386, issued November 7, 1933, on an application filed December 4, 1929, relates to presses having a multiplicity of related power actuated elements, including a pressure responsive device for relieving pressure upon a ram. It discloses controlling means for a bailing press which renders the press automatic in its operation. In Summey's press, the ram is operated by a fluid pressure device, the controlling means comprises an electro-magnetic valve for controlling the flow of fluid and an electrical circuit.

The record discloses that one Donald Clute, a sales engineer for Oilgear Company, in the spring of 1928, reported to his employer that a certain automobile manufacturer had need for a press for forcing clutch pins into fly wheels. The report explained how the proposed press could be constructed to execute a semi-automatic cycle, reversing in response either to a deficient pressure or to an excessive pressure. This ability to reverse on either of these two distinct pressures opened up the possibility of furnishing a press which would press pins of the right size all the way into the bottom of the hole and then reverse when the obstruction of a ram movement attendant upon bottoming caused the predetermined pressure to be exceeded. In directing the embodiment of this idea in the proposed press, Clute suggested the use of electrical means to transmit the necessary control impulses—he directed that a pressure switch and an electro-magnet be so arranged that the reversing valve would move when a predetermined pressure was reached so as to cause reversal of the ram. Following out these directions a press was designed, constructed, and delivered to the customer, where it was put into operation.

On June 4, 1930, Clute filed an application for a patent which issued May 23, 1933 as patent No. 1911138. It covered a drilling machine ordinarily employed for drilling holes, and had a rotary spindle to which a drill or boring tool was attached, a drive for rotating the spindle, and a feed for advancing the drill into the work.

The claims of a patent are to be understood and interpreted in the light of its specifications, Schriber–Schroth Co. v. Cleveland Trust Co., 311 U. S. 211, 217, 61 S.Ct. 235, 85 L.Ed. 132. Ernst in his specifications recites:

"It is accordingly an object of the present invention to provide a control means for

hydraulic motors of the reciprocating double-acting type, including a single element which is adjustable to adapt the control means to effect either semi-automatic or completely automatic operation of the motor.

"Among the objects of the invention are to provide electrical control means capable of being nicely adjusted to effect accurate regulation of the travel of the work element and of the pressure attained during a working stroke, and to provide control means including a single element which is selectively adjustable to adapt said means for automatically reversing the travel of the work element at the end of a working stroke either upon the attainment of a predetermined pressure in the work cylinder, or upon the movable work element's reaching a predetermined position." Thus it is clear that the objects of the Ernst patent are to provide control means including a single element which is adjustable to effect either automatic or semi-automatic operation of a motor, to provide electrical control means, and to provide means including a single element which is adjustable to effect reversal of a work element either on distance or pressure.

As we have already observed, the Ernst patent is not for a new machine or for new mechanical elements, and from the patent we learn that the control shown may be arranged to cause the ram of a hydraulic motor to advance on a working stroke, or to cause the ram to execute a succession of reciprocations until some agency intervenes to stop it. Another arrangement of the control will cause the ram to be reversed at the end of its working stroke either in response to the ram reaching a given point, or to be reversed in response to the fluid pressure in the motor reaching a given maximum. None of the claims relied upon defines a complete assortment of these four functions. The claims are all sub-combination claims and all are concerned with electric controls.

It is claimed that Clute disclosed combinations comprising the elements found in the Ernst patents. Plaintiff, however, insists that this is not true for the reason, so it says, that Clute's machine is only semi-

automatic and differs in principle of operation, in that it has no device which can be used as a selective means for producing either automatic operation or semi-automatic operation of the machine.

But reversal of a press on either distance or pressure was taught by the Smith patent No. 1552768, disclosing a press provided with controlling means which renders the press automatic in its operation. Lamb and Fee disclosed a pressure actuated switch and an electro-magnet for reversing a hydraulic motor so as to execute an automatic cycle, and Clute has a control capable of causing (1) a ram of a hydraulic motor to be reversed on pressure and to be brought to rest at the end of a return stroke (semi-automatic); (2) to be reversed at the end of a working stroke on pressure and reversed on distance at the end of a return stroke (automatic); (3) to be reversed on pressure at the end of a working stroke and either to be reversed on distance at the end of a return stroke (automatic) or to be brought to rest at the end of a return stroke (semi-automatic); and (4) to be reversed either on pressure or on distance at the end of a working stroke and brought to rest at the end of a return stroke, as defined by the claims in issue. In other words, the controls perform the same functions and operate in the same manner prescribed in the Ferris and Clute or other prior patents. In such a situation it cannot be said that Ernst disclosed a new combination or an arrangement of known elements producing a new and beneficial result, and since the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function and accomplish no new result, patentable invention is not involved. Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L. Ed. 1008, and National Pressure Cooker Co. v. Aluminum Goods Mfg. Co., 7 Cir., 162 F.2d 26. In the light of these cases, the court did not err in holding the claims in issue invalid. In reaching this conclusion we are not unaware that a patent, regularly granted, is presumed to be valid, and that where claimed prior art was considered and rejected as not anticipatory, the action

of the Patent Office officials is entitled to great weight.

One other matter requires brief discussion. Plaintiff makes the point that the court erred in concluding that defendant was entitled to a decree dismissing the complaint for want of equity as to all of the claims originally in issue. The argument is that there is no duty on a patentee to disclaim any part of his patent until after judicial interpretation, and Ensten v. Simon, Asher & Co., 282 U.S. 445, 51 S.Ct. 207, 75 L.Ed. 453, and Marconi Wireless Tel. Co. v. United States, 320 U.S. 1, 63 S. Ct. 1393, 87 L.Ed. 1731, are cited. In our opinion, in view of the factual situation, neither of these cases bears upon the question involved.

The record discloses that prior to trial plaintiff designated that at the trial it would rely upon fifteen claims of the first patent and twenty-two claims of the second patent. After the trial had commenced, plaintiff announced that it would rely only upon the six claims of each patent heretofore discussed. In effect this was a motion to dismiss its complaint as to twenty-five of the claims.

Prior to the adoption of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the right to dismiss without prejudice was deemed to be a substantial one, but it could be defeated if some plain legal prejudice would result to defendant other than the mere necessity or prospect of a second litigation upon the same subject matter. Since the adoption of the rules of civil procedure, the Conformity Act, 28 U.S.C.A. § 724, is no longer applicable. International Shoe Co. v. Cool, 8 Cir., 154 F.2d 778, and cases cited therein.

Rule 41(a)(1) of the Federal Rules of Civil Procedure gives a plaintiff the right to dismiss without order of the court either before service of an answer or by written stipulation of the parties, but rule 41(a)(2) provides that an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. The effect of this rule was to confer upon the court in all civil actions the equitable power to impose upon a plaintiff

seeking to dismiss without prejudice " 'such terms and conditions as the court deems proper.' " Home Owners' Loan Corporation v. Huffman, 8 Cir., 134 F.2d 314, 316.

Under the state of this record we think it was a matter of discretion. We cannot say the court abused its discretion.

Affirmed.