### REVERSE STITCH MFG. CO. et al. v. CALIFORNIA REVERSE STITCH CO. et al.

#### Civ. No. 7398.

United States District Court
S. D. California, Central Division.

Jan. 17, 1949.

Harris, Kiech, Foster & Harris and Ford W. Harris, Jr., all of Los Angeles, Cal., for plaintiffs.

Messrs. Lyon & Lyon and Frederick W. Lyon, all of Los Angeles, Cal., for defendants.

J. F. T. O'CONNOR, District Judge.

This is an action for infringement of Letters Patent #2235552, issued March 18, 1941 to Grant G. Gilbertson. The complaint originally also alleged a cause of action for unfair competition. This claim has been dropped and the parties have made it clear that such facts as show unfair competition will be considered only as an aggravation of damages, if any. The parties have also agreed to await the de-

termination of the question of liability before considering assessing damages.

The parties plaintiff in the action are: Reverse Stitch Manufacturing Co., a limited partnership composed of Robert B. Myers, Laurence M. Stanfield, and Armand J. Roux as exclusive licensee of the patent in suit, and Grant G. Gilbertson, the inventor of the patented device.

The parties defendant are: California Reverse Stitch Co., which is simply the name under which the defendant, Louis Seaman, is doing business, and Western Sewing Machine Co., a limited partnership composed of Robert H. Mejia and Eugene S. Kleeman. The partners are being sued in their individual and representative capacities. California Reverse Stitch Co. is the manufacturer of the alleged infringing device and Western Sewing Machine Co. is the distributor.

The jurisdiction of this court is conferred by the Patent Laws of the United States.

To the charges of the plaintiff, the defendants have raised the following defenses: (1) That the said patent is invalid because it is anticipated by prior art, and because it lacks invention, (2) that the patent as granted does not claim that which makes it new and novel, (3) that defendant's device does not infringe.

By further agreement between the parties, only claim (1) of the patent is alleged to have been infringed, and only defendant's device exemplified by exhibit 6 is alleged to be an infringement.

Before discussing the questions of law and fact which will be resolved by the court, it would be helpful to discuss the background and the situation under which the patented device was invented.

The device described in the patent in suit is a simple reversing attachment that has been made so that it will fit onto most conventional family type sewing machines. Its primary function is twofold: it regulates the length of the stitch, and it reverses the direction of the stitch, without the necessity of turning the goods. Both these functions can be accomplished quite easily at the desire of the operator or seamstress. Its most valuable features are that it is simple, cheap, easy to install, and may be installed without mutilating or defacing the machine in which it is to go. From the standpoint of the housewife, it is an easy and inexpensive method of converting an old fashioned sewing machine that will not reverse, into one that will, saving a cost of well over a hundred dollars by eliminating the necessity of purchasing a brand new sewing machine.

It is important to note that for many years prior to issuance of the patent in suit, sewing machines with built-in mechanisms which supplied the valuable reversing feature, had been manufactured. However, these mechanisms were not adaptable to other machines without considerable drilling, cutting and alteration of the machine into which they were to go.

The court observed a demonstration at the trial of this cause where a sewing machine was made to reverse by inserting a pair of pliers in the opening of a machine and actuating the necessary parts therewith. The invention then, is new and novel because it is a clever attachment that can be installed in practically all family sewing machines quickly, inexpensively and without cutting or mutilation. It has enjoyed considerable commercial success.

Claim 1 of the patent in suit claims,— "In a sewing machine including a hollow column, a driven shaft journalled in said column, and an oscillating and reciprocative arm operatively connected with said shaft for actuating a feed mechanism; a stitch regulating and reversing mechanism mounted in said column and comprising, a guide block pivotally mounted in the column for effecting longitudinal reciprocative movement of said arm during oscillation imparted thereto by said driven shaft, a sleeve threaded in said column, an adjustable shank slidably mounted in said sleeve, an arm connecting said block and shank, and resilient means for releasably holding said block in adjusted position."

*The validity of the patent in suit.*

There is no doubt but that the issuance of letters patent carries with it a presumption that said patent is valid. The rule, long familiar in patent cases, has been recently reiterated by the Circuit Court of Appeals for the Ninth Circuit, in

Bianchi v. Barili 168 F.2d 793. That opinion collects the important cases on the point and phrases the rule, 168 F.2d at page 795, thus:

"At the outset, it should be observed, that 'the grant of letters patent is prima facie evidence that the patentee is the first inventor of the device described in the letters patent, and of its novelty.' Cantrell v. Wallick, 117 U.S. 689, 695, 6 S.Ct. 970, 974, 29 L.Ed. 1017; 3 Walker on Patents, Dellers Edition, § 701, page 2009.

"Before a patent can be declared invalid because of anticipation, its lack of novelty must be established beyond a reasonable doubt. Cantrell v. Wallick, supra, 117 U.S. at pages 695, 696, 6 S.Ct. 970; 1 Walker § 63, pages 300–303; American Bell Telephone Co. v. People's Telephone Co., C.C. N.Y., 22 F. 309, 313, affirmed 126 U.S. 1572, 8 S.Ct. 778, 31 L.Ed. 863; Searchlight Horn Co. v. Victor Talking Machine Co., D.C.N.J., 261 F. 395, 401."

Bolstering and supporting the prima facie case of the plaintiff is the testimony of all parties that there was a great need in the field for a device or attachment such as this. That this need was satisfied by the plaintiffs' article is further evidenced by the outstanding reception given it by the public. Approximately 14,000 of these attachments have been sold within approximately a one-year period. Commercial success is strong evidence of an invention, and the Supreme Court of the United States has so declared in Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, at page 279, 64 S.Ct. 593, 594, 88 L.Ed. 721:

"Viewed after the event, the means Anthony adopted seem simple and such as should have been obvious to those who worked in the field, but this is not enough to negative invention. During a period of half a century, in which the use of flashlight batteries increased enormously, and the manufacturers of flashlight cells were conscious of the defects in them, no one devised a method of curing such defects. Once the method was discovered it commended itself to the public as evidenced by marked commercial success. These factors were entitled to weight in determining whether the improvement amounted to invention and should, in a close case, tip the scales in favor of patentability."

See also the case of Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 434, 31 S.Ct. 444, 447, 55 L.Ed. 527:

"The tire has utility, a utility that has secured an almost universal acceptance and employment of it, as will subsequently appear. It was certainly not an exact repetition of the prior art. It attained an end not attained by anything in the prior art, and has been accepted as the termination of the struggle for a completely successful tire. It possesses such amount of change from the prior art as to have received the approval of the Patent Office, and is entitled to the presumption of invention which attaches to a patent."
and 220 U.S. on page 435, 31 S.Ct. on page 447:

"But the law has other tests of the invention than subtle conjectures of what might have been seen and yet was not. It regards a change as evidence of novelty, the acceptance and utility of change as a further evidence, even as demonstration."

And in Bianchi v. Barili, supra, 168 F. 2d at page 796, quoting from Walker on Patents, Vol. 2, sect. 247, page 1212:

" * * * Where an invention undoubtedly marks a substantial advance in the art, the patent is to be given a reasonably liberal construction so as to secure to inventors the rewards to which they are entitled."

Thus, we have the plaintiffs' case on the validity of the patent, supported by commercial success, utility and acceptance, and being a substantial advance in the state of the art. The defendant now has the burden of going forward with his evidence. He has the burden of proving beyond a reasonable doubt the invalidity he asserts. The defendant offered in evidence a number of sewing machines, several Singers, a Davis machine, and several patents to prove that the patented device was old in the art and claiming that prior art cannot be patented.

The point raised by the defendant is correct from point of view of the law, 35 U. S.C.A. § 31. The cases cited by defendant support his view. In R. G. Le Tourneau v. Gar Wood Industries, Inc., 9 Cir., 151 F. 2d 432, 435, the court said, quoting from

Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L. Ed. 58:

"A new application of an old device may not be patented if the 'result claimed as new is the same in character as the original result' * * * even though the new result had not before been contemplated."

See also: Stoody Co. v. Mills Alloys Inc., 9 Cir., 67 F.2d 807. As a further question of law, the defendant argues that there is no presumption of validity of the patent in suit, because the Smith patent (hereinafter referred to) was not cited by the Patent Examiner. The case cited in support of this contention is Mettler v. Peabody Engineering Corp., 9 Cir., 77 F.2d 56, 58:

"The presumption of validity which attends the issuance of letters patent by the patent office is overcome in this case by the clear evidence of anticipation in the prior art which was not cited or considered by the Patent Office when the application for appellant's patent was passed on. (Citing cases.)"

▉ The precise and only questions before this court at this time, then, are questions of fact. In Faulkner v. Gibbs, 170 F. 2d 34, 37, decided Oct. 8, 1948, by the U.S. Court of Appeals for the Ninth Circuit, it was made plain that:

"The question of whether or not a new and useful combination is the result of mere mechanical skill, or of inventive faculty, is one of fact.

"What constitutes invention as distinguished from a mere aggregation, is a question of fact.

"Questions of invention and patent validity are questions of fact.

"Whether prior art patents or publications disclose or anticipate the subject matter of a patent in issue is determined as a question of fact.

"The issue of infringement presents a question of fact."

The Singer and Davis sewing machines that were introduced in evidence by the defendant to show prior art fall far short of what is needed to establish this defense adequately. Defendant did introduce testimony tending to show that there was a certain similarity in result with that attained by the Gilbertson attachment. The court remarked at the outset that reversing features in sewing machines are old. The court also explained that the inventive feature of this patent resides in the fact that it is an attachment. See claim 1 of patent supra. All this is ignored by the defendant. Granted that the identical reversing feature can be attained by a pair of pliers inserted in the machine itself, does that negative invention? The plaintiff does not say that he has invented a reversing principle. The claim is for an attachment that regulates the size of the stitch and reverses, etc., it is the combination of parts, comprising:

"a guide block * * * a sleeve threaded in said column, an adjustable shank slidably mounted in said sleeve, an arm connecting * * * and resilient means for releasably holding said block * * * etc."

It was also shown that neither the Singer nor Davis machines were anything but built-in mechanisms which required altering the physical structure of the machine. Neither could be put on other machines, they were not as adaptable nor as versatile as the Gilbertson device. The Singer machine when demonstrated in court, showed its ability to reverse, but the length of the stitch in reverse varied with the length of the stitch in forward. In the same machine it was necessary to grind down certain parts because of the limitation of the size of the frame that housed the working members. There was, in short, a complete failure of comparison between the crude, ineffectual workings of these machines as compared to the Gilbertson attachment which is smooth, accurate and efficient.

The Smith patent, No. 1341388, issued on May 25, 1920, is relied upon by the defendant as a prior patent of similar art. This patent was not cited by the Examiner nor considered by him when the Gilbertson patent was under consideration. This patent, it is true, is a device which claims to accomplish the same functions as the Gilbertson patent. It is presumably an attachment. Upon examination, the interior is similar to the extent that a guide block is moved, by a shank or arm, and the

movement of this guide block in turn affects the movement of an oscillating arm, in its turn changing the direction and length of the stitch. This is the only similarity. There are many more weaknesses and dissimilarities which impress the court as being more important and entitled to more weight than the mere casual likenesses of the two patents.

In the first place, it appears affirmatively that this device, the Smith device, was never manufactured nor placed upon the market. The demand must have been as great in those days, as the witnesses testified the demand is today. Secondly, the expert witness of the plaintiff testified that the Smith device is unworkable. He testified that the drawing was a drawing of an imaginary machine and that the mechanism would not operate because the shank, being supported in three places must, of necessity, move in a horizontal plane. That being so, in order to move the guide block which is attached at the end of the shank, it would be necessary to move the shank in what he described as a "parabolic arc". Since the drawing does not show an eccentric pin nor an adjustable means for accommodating the altered position of the guide block, he concluded that the device just would not work. There were other reasons for this conclusion, and the court having examined the Smith patent, agrees with this reasoning.

Thirdly, the defendant did not offer to prove, nor prove, that the Smith device could be attached to other machines, or any machine for that matter, nor that if it could, such could be done without extensive alteration of the machine on which it was to fit.

Fourthly, the Smith patent does not show nor describe a sleeve, a shank slidably mounted in said sleeve, a connecting arm, and the resilient means necessary to keep the guide block in adjusted position. It is necessary again to refer to claim 1 of the patent in suit, supra, and again to refer to the combination of parts which the court has set out above and which this court deems to contain a patentable invention.

■ The defendant offered no evidence to explain or interpret the Leilich patent, and in the absence of such evidence this court is not bound to consider same. Bell v. MacKinnon, 2 Cir., 149 F. 205.

■ One final point. It is shown that other prior art was before the Examiner at the time the Gilbertson patent was being considered. This prior art is similar to the art defendant now asks us to consider in order to find the patent in suit invalid. The scales have tipped first in favor of the plaintiff when he established his prima facie case. The defendant has sought to re-align them by the evidence he introduced. It is the judgment of the court that defendant has failed to meet the burden placed upon him. When fairly and thoroughly weighed, the evidence establishes the validity of the patent in suit.

*Does the Gilbertson patent claim the invention?*

The defendant argues most strenuously that the inventor has not claimed that which is necessary to his invention. Specifically, defendant points to the testimony at the trial which, in effect, demonstrated that a certain "offset mechanism" is necessary in order that this attachment will work properly. Again, in point of law, this court has no quarrel with the defendant's position. 35 U.S.C.A. § 33 is definite and points out: "* * * and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery."

■ The cases cited by both parties give definite content to the quoted language of the statute. The claims must be read in the light of the specifications, definiteness may be imparted to a claim by the specifications, etc. See General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402; Farmers Cooperative Exchange v. Turnbow, 9 Cir., 111 F.2d 728; McRoskey v. Braun Mattress Co., 9 Cir., 107 F.2d 143; Payne Furnace & Supply Co. v. Williams Wallace Co., 9 Cir., 117 F.2d 823.

■ The substance of these cases is that an inventor must by some reference in his claim, supported by the necessary detail in the specifications and drawings, point out explicitly that which he claims as an invention. *Considerable lattitude is given the inventor in the use of language, in*

the interests of justice. The so-called off-set mechanism, adverted to by defendant, consists of a roller mounted on an eccentric pin, which pin is attached to the oscillating arm. Its function is to accommodate the altering position of the guide block when the shank is pulled to reverse the stitch. The roller moves along a channel in the guide block, and the eccentric pin rotates so that there will be no displacement of oscillating arm, and no binding or sticking of the shank when said shank is moved in a horizontal manner. It must be conceded that the Gilbertson patent in no way claims this combination of parts or feature, claim 1 supra. There is a reference to the roller and eccentric pin in the specifications, but nowhere in the claim is any language purporting to point this out as part of the invention. The use of the phrase, "a guide block pivotally mounted" is the only functional language which concerns itself with this area of the patented device. The pivot there referred to is not the so-called offset mechanism,—rather it is a reference to the pivot upon which the guide block is mounted, and the requirements of reasonableness do not permit this court to add to claims that which is not pointed out by the inventor himself. In claim 2 of the patent there is a definite reference to the roller upon which the guide block moves, and this strengthens the view of the court that such roller and pin were never included in claim 1. It may be that the inventor was entitled to a better patent than he finally got, but with that this court is not concerned.

Proceeding, then, under the view that this offset mechanism was not legally claimed by the inventor, is this mechanism consisting of the eccentric pin and roller necessary to the invention? That is a question of fact for the judge. Faulkner v. Gibbs, supra.

At the trial, defendants' counsel did extract from one of the plaintiffs an admission that the offset mechanism was "necessary". The interpretation that defendants put upon this admission is that the invention is thereby completely invalid, since the offsetting pin and roller were not claimed, and since the device would not work otherwise, then this combination of parts constitutes that invention, and it has not been patented. This is an extraordinary contention.

The substance of the testimony does no more than declare that the offsetting parts are necessary in order for a sewing machine to function with the patented device installed. The necessity is confined solely to this: a sewing machine will not function without a needle, or without thread, or without a driven shaft, indeed any and all of the numerous parts that make up a sewing machine could be necessary in the same sense that the offset is. The defendant has isolated a combination of parts in striking juxtaposition to the patented device when installed in a sewing machine. The fact that these parts are necessary to the overall functioning of the sewing machine, as distinguished from the functioning of the patented article, has no bearing upon the patented article that is evident to the court. Again, the court calls attention to the patented device as described in claim 1, supra.

The failure to claim the offset as a part of the invention, then, has one effect, and only one. Its effect is to limit the patent that was secured, it in no manner detracts from that which was adequately claimed and patented.

### Does the defendant's device infringe?

This is the final question before the court. This question is also a question of fact. Faulkner v. Gibbs, supra. The law on whether or not a device has infringed another has been set out numerous times. Appropriate language covering the fact situation now before the court is found in Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147:

"Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape."

(and further down on the same page):

"A close copy which seeks to use the substance of the invention, and, although

showing some change in form and position, uses substantially the same devices, performing precisely the same offices with no change in principle, constitutes an infringement."

See also Bianchi v. Barili, supra, 168 F.2d at page 800, quoting from Walker on Patents sec. 463:

"Changing the relative positions or reversal of the parts of a machine or manufacture does not avert infringement, where the parts transposed perform the same respective functions after the change as before."

It is apparent after examination of defendants' device with the patented one that defendant has made an exact duplicate of the Gilbertson product, a "Chinese copy" as the expression is used among patent attorneys. Defendant insists that his device does not infringe. His argument in this instance is directed exclusively to a difference in a single part and its function. The defendant claims that in his device a friction washer is used whose function is to hold the guide block firmly, that is keep it from vibrating. This washer is placed in front of the screw that mounts the guide block. On the Gilbertson device, it is said a difference exists because a snapover spring is used. This spring is located around the connecting arm which joins the end of the sliding shank with the guide block. The defendant offers nothing more. The striking similarity in all other features, that is: the threaded sleeve, slidable shank, connecting arm, pivotally mounted guide block, etc., are not even mentioned.

Without anything more, this court would be compelled to hold that at this point the differences between the two devices is unsubstantial and find for the plaintiffs on the question of infringement, even granting that defendant has pointed out a difference. However, it appears conclusively that even this one small difference so relied upon by defendant is no difference at all. According to the expert testimony introduced at the trial, the friction washer of the defendant and the snapover spring of the plaintiff accomplish the same result, that is to keep the guide block in adjusted position. An independent examination by the court found exactly the same thing: that the spring in one case and the washer in the other hold the guide block so that it will not slip and cause the length of the stitch to vary. The patent describes the function of the two parts thus—"resilient means for releasably holding said block in adjusted position."

The court finds that the defendants have reproduced devices which are, for all practical purposes, identical with the patented device. The transposing of "resilient means for releasably holding said block in adjusted position" does not avert infringement. Bianchi v. Barili, supra.

Judgment in favor of the plaintiffs and against the defendants.