## KITTREDGE *v.* ELLIOTT.

One who keeps a dog accustomed to bite sheep, is answerable for injuries caused by such acts, if he have notice of the animal's vice; and notice of a single act of mischief is sufficient evidence of his knowledge of the animal's mischievous disposition.

It is not error if depositions containing exceptionable matter have gone to the jury without fault of either party, unless it appear that such matter was material.

ERROR, brought to reverse a judgment recovered in the court of common pleas by the defendant, in an action of trespass on the case to recover damage for injury done to the plaintiff's sheep, which were chased, worried, and bitten, by the defendant's dog.

To prove the defendant's knowledge of the mischievous habits and disposition of the dog, the plaintiff offered evidence of injury done to a lamb belonging to the defendant, which he contended was done by the dog, and which was known to the defendant in season for him to have prevented subsequent injury by the dog, in chasing and worrying the plaintiff's sheep, as complained of in this suit.

It appeared in evidence, that the defendant's sheep having got into an inclosure where they were not allowed to be, his boys were directed to drive them out. They took with them the dog, which was accompanied by another dog belonging in the neighborhood. The boys started the sheep and attempted to set the dogs upon them, but they would not go. The sheep were driven over a stone

wall into a pasture, when the dogs pursued them and followed them over a hill out of sight of the boys. The boys came up soon after, and found that one of the lambs had been bitten in the neck, and the two dogs, and a third dog which had joined them, stood within a few rods of the lamb.

The lamb was so injured that the defendant caused it to be killed. No other evidence was offered tending to show that any injury had been done by the defendant's dog, except some declarations which were made in the defendant's family, in his presence, that their dog had killed one of their lambs.

The court instructed the jury, that if from the above testimony they believed that the defendant's dog had shown a mischievous disposition to bite and worry sheep, that it was sufficient notice to the defendant to place him upon his guard, and to render him liable for any subsequent damage done by the dog.

At the close of the charge, the plaintiff's counsel requested the court to charge the jury, that if a single instance of killing a sheep by the defendant's dog come to the defendant's knowledge, that this was sufficient evidence of the mischievous disposition of the dog. But the court declined charging any further than as above, on which account the plaintiff excepted, (the verdict in said case having been rendered for the defendant) and further excepted, for the reason that the court admitted the deposition of Abraham Woodman in evidence, though objected to by the plaintiff as incompetent, and for the reason that a portion of the deposition ordered to be erased, was not erased, but remained legible, and the deposition, in this state, was delivered to the jury. The plaintiff's exceptions for said causes were allowed.

*Pillsbury*, for the plaintiff.

*French*, for the defendant.

Kittredge *v.* Elliott.

Woods, J. It can not be said that there was not evidence in this case upon which the jury might have found, that a single instance of killing a sheep by the defendant's dog had occurred, and had come to his knowledge before the event which is alleged as the foundation of the plaintiff's action. It, therefore, becomes a legitimate and necessary subject of inquiry, whether notice of one instance of such violence or misbehavior on the part of the animal, is sufficient to put the owner or keeper of him upon his guard, and to render him answerable for any mischief of the same kind subsequently done by the dog.

In *Rex* v. *Huggins*, 2 Lord Raymond, 1583, it is said, that " There are cases of murder when no act was done by the persons guilty ; as the letting loose a wild beast, which the party knows to be mischievous, and he kills a man. The owner of the beast is guilty of murder. There is a difference between beasts that are *feræ naturâ*, as lions and tigers, which a man must always keep up at his peril, and beasts that are *mansuetæ naturâ*, and break through the tameness of their nature, such as oxen and horses. In the latter case, an action lies if the owner had notice of the quality of the beast ; in the former case, the action lies without such notice." Such is, without doubt, in general the law, and dogs are considered, in the cases which relate to the subject, as presumptively of the tamed or domesticated class of animals. Tomlin's Law Dictionary, Tit. Dog.

In *Brock* v. *Copeland*, 1 Esp. 203, Lord Kenyon ruled that a man had a right to keep a dog for the protection of his yard or his house ; that the injury which this action was calculated to redress, was when the animal, known to be mischievous, was permitted to go at large, and the injury arose from the fault of the owner.

So, in *Vrooman* v. *Lawyer*, 13 Johns. 339, the court held, that if damage be done by any domestic animal kept for

use or convenience, the owner is not liable to an action on the ground of negligence, without proof that he knew that the animal was accustomed to do mischief.

So the only question is, whether a notice of one single act of mischief is sufficient to charge the owner with the consequences of subsequent acts of the same kind.

In *Jenkins* v. *Turner*, in which the plaintiff declared that the defendant *scienter retinuit quendam aprum ad mordendum et percutiendum animalia consuetum ;* which boar bit the mare of the plaintiff. The evidence was, that the boar had once bitten a child; and, although it was objected that the declaration should have pointed out what kind of animals the boar was used to bite; otherwise, by *" animalia"* might be intended frogs, &c., the biting of which would indicate no such ferocity as to put the owner upon his guard; yet it was held to be well enough after verdict. In the case of a dog, there might, it was said, be a question whether the word *" animalia"* would be sufficient; because it might have been intended of some such animals as they naturally bite, such as hares, cats, &c.

In that case it was also said, that the owner of a dog accustomed to bite sheep, after notice of the first mischief, ought to have destroyed or hindered him from doing any more hurt, and, therefore, shall be answerable keeping the dog, if he bite a horse. 1 Lord Raym. 109.

In *Jones* v. *Perry*, 2 Esp. 482, which was an action on the case for keeping a mischievous dog, by which the plaintiff's child was bitten; it was held, that the report of the dog's having been before bitten by a mad dog, is evidence to go to the jury that the defendant knew that the dog was mischievous and ought to be confined; particularly if the defendant, by tying the dog up, showed some knowledge or suspicion of the fact.

In *Smith* v. *Pelah*, 2 Strange 1264, the Chief Justice ruled, that if a dog had once bitten a man, and the owner, once having notice of it, keeps the dog; and lets him go

about or lie at his door, an action will lie against him at the suit of a person who is bitten, though it happen by such person's treading upon the dog's toes; for it was owing to his not hanging the dog on the first notice, and the safety of the king's subjects ought not afterward to be endangered.

*Sarch* v. *Blackburn*, 4 Carr. & Payne 297, was an action for an injury done to the plaintiff's leg by the bite of a dog kept by the defendant. A witness who was called by the plaintiff, stated that he had been bitten by the dog in question about three years before, and the defendant, upon that occasion, applied some brandy to the leg. It was submitted by the defendant that there was no case to go to the jury. *Tindall*, C. J.: "I think that the evidence given by the witness, that the dog had bitten him before, is something to go to the jury. It launches the case." This case comes fully up to the one before us.

*Blackman* v. *Simmons*, 3 Carr. & Payne 138, was for an injury received from a bull. It appeared that notice had been given to the defendant, that the bull had run furiously at a man. And it appeared, that while the defendant was in the act of purchasing him, he was warned of the mischievous propensity of the animal, and replied, that it would suit him all the better, as he wanted it to turn into a mead, where he was annoyed by people fishing. It was also proved, that upon a gentleman saying that he supposed he would not turn in the bull without giving notice to the public, the defendant's reply was, "Let him give notice himself." *Best*, C. J. (to the jury): "If you are satisfied upon the whole, that the injury occurred from the vicious nature of the bull, which the defendant knew, you will find your verdict for the plaintiff."

We think these cases sustain the proposition, that in order to charge a party for the mischief done by his disorderly animal, it is not necessary that he have notice that the animal has frequently "broken through the tame-

---
Kittredge *v.* Elliott.
---

ness of his nature" into acts of aggression upon man, or upon other animals in the dominion and ownership of man. It is unnecessary to prove more than that the owner has good cause for supposing that the animal may so conduct. And a good cause for so supposing is, that the animal has been known, in a single instance, to throw off the habits of domesticity and tameness, and to put on a savage nature ; and a jury may well conclude, from a single occurrence of the sort coming to the mind of a party, that he had that knowledge of the vicious nature of the animal that makes him liable in the eye of the law, for its subsequent acts of misbehavior.

As to the other error assigned, it does not appear by whose procurement the deposition was suffered to go to the jury in the condition described in the case. The general rule laid down in *Shepherd* v. *Thompson* is, that where a party causes depositions to be sent to the jury which contain improper matter, he will forfeit his verdict if he gain one. But the evidence may have gone to the jury through mistake, or have been wholly immaterial. *Page* v. *Wheeler*, 5 N. H. 91; *Shepherd* v. *Thompson*, 4 N. H. 213. It does not appear by the case, how the fact was. Nor is it important, since, for the first error, the judgment must be reversed.

*Judgment reversed.*