A. M. Lucks, Stanley F. Coar, and David J. Reedy, all of Scranton, Pa., for plaintiffs.

Edward J. Kelly and Kelly, Fitzgerald & Kelly, all of Scranton, Pa., for defendant.

JOHNSON, District Judge.

This is an action in trespass brought by Vincent Zarek, a minor, by his mother and natural guardian, and Dorothy Zarek, in her own right, against Cicero Fredericks, to recover damages for personal injuries to Vincent Zarek caused by the bite of a dog belonging to defendant. The case came on for trial before the court and a jury and verdicts were rendered for the plaintiffs, $4,000 for Vincent Zarek, and $1,000 for Dorothy Zarek. The defendant has now moved the court to set aside the verdicts and to enter judgments for the defendant on the point reserved by the court during the trial whether under all of the evidence the plaintiffs were entitled to recover, and if this motion be refused, for a new trial.

The facts in the case are briefly as follows: That the defendant operated a summer resort hotel or boarding house and farm near Marshal Creek, Monroe County,

**ZAREK et al. v. FREDERICKS.**
**· No. 970 Civil.**

District Court, M. D. Pennsylvania.

March 8, 1943.

Pennsylvania, where for periods over six years during the summer the plaintiffs had been guests; that on August 14, 1940, the plaintiffs were guests at the defendant's hotel, and at about 2:00 o'clock in the afternoon when the plaintiff, Vincent Zarek, intending to have his picture taken with the defendant's dog, "Sport", six years of age, came down and out of the back stairs from eating, the way usually taken by the guests to approach the swimming place and the look-out shanty where they could secure views of the mountains and the lake, and saw the dog, "Sport", lying on a platform or steps out side the kitchen door; that he walked over to the dog, calling the dog by name and patting it, when the dog growled and leaped at him, biting him seriously on the left cheek and left eyelid, causing serious lacerations resulting in pain, suffering, inconvenience and permanent disfigurement.

There was testimony that this dog, "Sport", was trained for a watch dog; that it was a large mongrel, its mother a Shepherd and its father unknown; that it was trained to protect the defendant, who usually had money on his person, and to protect the guests about the hotel; that it was kept under surveillance of the defendant and was not allowed to roam the premises or to mingle with the guests unlike another dog owned by the defendant and kept about the hotel and allowed about the premises; that it was most of the time confined to the kitchen and when outside the building it was kept either with the defendant or his wife; that when any person touched the dog it was unfriendly and the defendant objected to persons touching the dog; that when a person would attempt to approach the dog and pat it, it would back away and snarl; that on one occasion prior to the biting of the plaintiff when the defendant raised his hand and made a motion to strike Mrs. Fredericks the dog leaped at the defendant and tore the defendant's shirt from his back; and that when the dog, "Sport", attacked the plaintiff the defendant in the kitchen heard the dog growling and immediately went to the aid of the boy and prevented the dog from making a second attack on the boy.

The defendant's motion that the verdicts and judgments for plaintiffs be set aside, and judgments entered for the defendant on the point reserved, will be first considered. This motion raises the question whether there was sufficient evidence to establish the vicious character of the dog and the defendant's previous knowledge of that character.

In Mann v. Weiand, *81 Pa. 243, on page 253, Mr. Justice Mercur delivering the opinion of the court stated the law governing cases involving the bite of a dog as follows:

"In Smith v. Pelah, 2 Strange, 1264, it was said by Lee, C. J: 'If a dog has once bit a man, and the owner, having notice thereof, keeps the dog and lets him go about, or lie at his door, an action will lie against him at the suit of a person who is bit, though it happened by such person's treading on the dog's toes, for it was owing to his not hanging the dog on the first notice, and the safety of the king's subjects ought not afterwards to be endangered.' So in Arnold v. Norton, 25 Conn. 92, it was held that full and satisfactory proof of a single instance in which the dog had previously bitten a human being, and of the owner's knowledge thereof, was sufficient, but that the force of such testimony would depend much on the surrounding circumstances.

"In Kittredge v. Elliott, 16 N.H. 77 [41 Am.Dec. 717], evidence of notice of one attack by a dog was held sufficient to charge the owner with all its subsequent acts. In Loomis v. Terry, 17 Wend., [N.Y.], 496 [31 Am.Dec. 306], one instance seems to have been considered sufficient. One attempt of a bull to gore was held sufficient in Cockerham v. Nixon, [33 N.C. 269], 11 Ired. [Law] 269.

"We think one instance may show such unmistakable evidence of a vicious propensity as to make the owner of the dog, with notice, liable for any subsequent act of a similar character. The gist of the action for the subsequent misconduct of the dog, is for keeping it after knowledge of its vicious propensity. May v. Burdett, 9 Q. B., 10; Wheeler v. Brant, 23 Barb., [N.Y.], 324. It thereupon becomes the duty of the owner so to keep his dog as to guard against a repetition of similar misconduct. He is bound to secure it at all events, and is liable to parties afterwards injured if the mode he has adopted to secure it proves insufficient. Wood on Nuisance, section 763; Jones v. Perry, 2 Esp., 482; Mason v. Keeling, 12 Mod., 332. The principle on which this rule rests was held in Munn v. Reed, 4 Allen, [Mass.], 431, to be, that a ferocious animal, liable to do injury to men or property, is a nuisance,

and that keeping it after notice of such liability is so wrongful, that the owner is chargeable for any neglect to keep it with such care that it cannot do any damage to a person who without any essential fault is injured thereby."

In McConnell v. Lloyd, 9 Pa.Super. 25, on page 28, Smith, Judge, delivering the opinion of the court, laid down the rule governing cases involving the bite of a dog in the following language: "It is not necessary, in order to recover in this action, to show that the dog had actually bitten another person, before biting the plaintiff. If the dog evinced a propensity or habit indicating an intention to bite, the owner, having a knowledge of this, will be held responsible for any subsequent injury growing out of such propensity. This case was tried in accordance with the well-established principles of law announced and applied in Mann v. Weiand, *81 Pa. 243."

In Darby et al. v. Clare Food & Relish Company, 111 Pa.Super. 537, at page 539, 170 A. 387, at page 388, Baldridge, Judge, delivering the opinion of the court, defines the law covering actions for the bite of a dog as follows: "The gravemen of this action is not the failure of the defendant to maintain a proper fence, but is the keeping of a dog with knowledge of its vicious propensities. The defendant, having such knowledge, kept the dog at its peril and must respond for damages, irrespective of other omissions on its part. In Mann v. Weiand, *81 Pa. 243, 254, which was an action to recover for the death of the plaintiff's husband, caused by a ferocious dog, it was said: 'We think one instance may show such unmistakable evidence of a vicious propensity as to make the owner of the dog, with notice, liable for any subsequent act of a similar character. The gist of the action for the subsequent misconduct of the dog, is for keeping it after knowledge of its vicious propensity.' In Netusil v. Novak, 120 Neb. 751, 235 N.W. 335, 337, the court said: 'The owner of a dog, known by him to have vicious and mischievous propensities, owes a legal duty to every one to protect them from injury. He especially owes this duty to a traveler passing along the highway adjacent to his premises.' This case is also cited in Green's Cases on Torts, p. 235, and contains in its notes a number of other authorities. It is stated in 1 R.C.L. 1116, § 59: 'Negligence or lack of care on the part of the owner in keeping or restraining the animal need not

be shown, and proof of the absence thereof is no defense, despite the possibly contrary inference deducible from the statement of the rule, frequently met with in the reports, that one knowingly keeping a vicious dog is prima facie liable for injuries inflicted by it. Therefore unless the owner or keeper can be relieved by some act or omission on the part of the person injured, his liability may be said to be absolute.' "

In Spring Company v. Edgar, 99 U.S. 645, on page 654, 25 L.Ed. 487, Mr. Justice Clifford lays down the law governing suits for injuries caused by domestic animals as follows: "Domestic animals, such as oxen or horses, may injure the person or property of another, but courts of justice invariably hold that if they are rightfully in the place where the injury is inflicted the owner of the animal is not liable for such an injury, unless he knew that the animal was accustomed to be vicious; and in suits for such injuries such knowledge must be alleged and proved, as the cause of action arises from the keeping of the animal after the knowledge of its vicious propensity. Jackson v. Smithson, 15 Mee. & W. 563; Van Leuven v. Lyke, 1 N.Y. 515 [49 Am. Dec. 346]; Card v. Case, 5 C.B. 632; Hudson v. Roberts, 6 Exch. 697; Dearth v. Baker, 22 Wis. 73; Cox v. Burbridge, 13 C.B.N.S. 430."

■ From the evidence in this case and the law relating thereto the question of the liability of the defendant was one of fact for the jury and not of law for the court. There was sufficient evidence from which the jury could find that the defendant's dog, "Sport", had vicious propensities, and was liable to bite a person, which were known to the defendant before the dog bit the plaintiff, and, therefore, the motion to set aside the verdicts and judgments and render judgments for the defendant must be overruled.

On the motion for a new trial, the defendant assigns five reasons, as follows:

1. The verdicts are against the evidence.

2. The verdicts are against the weight of the evidence.

3. The verdict and damages are grossly excessive.

4. The verdicts and judgments are contrary to law.

5. The Court erred in refusing to grant the defendant's motion for a compulsory nonsuit.

68

These reasons may be discussed under two headings: First, that the verdicts are against the evidence, and secondly, that the verdicts are excessive.

 It cannot be said as a matter of law that the verdicts are against the evidence. There was sufficient evidence for submission to the jury that the dog at the time the plaintiff was bitten had vicious habits and a propensity to attack or bite a person and that these vicious habits and propensity to attack or bite a person were known to the defendant. This clearly appears in the evidence briefly stated above. The dog's training, its size, its general behavior, its attacking the defendant, the treatment of the dog by the defendant, the manner of the attack on the plaintiff boy by the dog without any provocation, constitute ample evidence of the vicious nature of the dog and his propensity to attack and bite a person, and the notice and knowledge the defendant had of these tendencies.

The authorities cited above show that evidence of notice of one attack by a dog was held sufficient to charge the owner with all its subsequent acts. The evidence in this case showed more than simply one previous attack of which the defendant had notice. There was evidence showing that the dog was trained to be a watch dog; that the owner thought it unsafe to let the dog run at large and mingle with the guests about the hotel. It must further be considered that the owner conducted a summer hotel or boarding house where persons, with their families, were guests and entitled to protection from harm, especially from a vicious dog kept on the property.

The complaint that the verdicts were excessive is without merit. The plaintiff, Vincent Zarek, received a serious bite and laceration on the left eyelid and cheek resulting in serious scars, disfiguring the boy, and causing permanent injury accompanied by pain, suffering and inconvenience of a serious nature, so that he became mentally disturbed, unable to carry on his studies as previously, resulting in mental depression. Certainly an injury resulting in such condition is serious and the damages are substantial, and we cannot say as a matter of law that this verdict of $4,000 for the plaintiff, Vincent Zarek, was excessive. It might well be argued that it was low. The court cannot hold as a matter of law that this verdict was excessive un-

less it be so high as to shock the conscience of the court.

Nor can the court say that the verdict of $1,000 for the mother is excessive. There was ample evidence to show that an operation, which might or would help the condition of plaintiff's cheek and possibly the eyelid, would cost from $750 to $1,000 or $1,200. In addition to this, it was the duty of the parent or parents to give the boy care and necessary medical and surgical attention, and the court cannot say under the evidence that $1,000 was excessive. In Lookatch v. Robinson, 318 Pa. 545, 179 A. 66, it was held that the imperative test in determining whether or not the court should reverse a judgment because it is excessive in amount is whether it is so high, under all the circumstances, as to shock the sense of justice of the court. Accepting this as the proper rule, the court cannot hold in the present case that the verdicts are excessive and, therefore, the *motion for a new trial must be refused.*

The motion to set aside the verdicts and for the entry of judgments for the defendant is over-ruled and dismissed, and the motion for a new trial is over-ruled and a new trial is refused.