37 C.C.P.A.(Patents)

Application of BARRETT et al.
Patent Appeal No. 5671.

United States Court of Customs and
Patent Appeals.

Argued Jan. 11, 1950.

Decided May 9, 1950.

H. F. Woodward, Washington, D. C., for appellants.

E. L. Reynolds, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel) for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL and JOHNSON, Judges.

JOHNSON, Judge.

Appellants are dissatisfied with the decision of the Patent Office Board of Appeals affirming the Primary Examiner's rejection of claims 24 through 28 of their application, filed November 2, 1942, for a patent on a process for preparing color composition usable as a coating material, and a novel apparatus for preparing the composition. They appeal from that decision, as provided by R.S. 4911, 35 U.S.C. 59a, 35 U.S.C.A. § 59a.

The application was examined in the Patent Office under the "dual prosecution" procedure in effect prior to November 1948 [present practice is governed by par.

705, 705.1, 705.1a through f, Manual of Patent Examining Procedure, U. S. Patent Office, November 1949], claims 24 and 25 being acted upon in Division 32 of the Patent Office while claims 26 through 28 were handled by Division 64. Under the practice then followed in the Patent Office, the examiner of each Division filed a separate statement of the grounds of the final rejection affecting the claims examined in his division. One process claim, 14, was allowed. The process claims, 26 through 28, were rejected in Division 64 as lacking invention over references cited. Claims 24 and 25, drawn to the apparatus, were rejected as reciting an aggregation, and not a patentable combination.

The board in affirming the rejections cited as references two patents and a publication which had been cited by the examiner of Division 64 in his statement, viz:

Hughes et al., 2,351,638, June 20, 1944*
(*—filed October 12, 1940).
Coleman, 2,185,110, Dec. 26, 1939.
Paint Manufacture, July 1935, pp. 202–207,
"Paint Making Machinery," by N.N. Maas (English).

The board cited also three patents which it states had been cited during the prosecution of the case. Two of them are cited in the early actions appearing of record. The third, Calcott et al. is not elsewhere mentioned in the printed record.

Auspitzer, 1,577,052, Mar. 16, 1926.
McGougan et al., 1,671,863, May 29, 1928.
Calcott et al., 2,021,143, Nov. 19, 1935.

The application refers to a method and apparatus for preparing an aqueous suspension of pigment and adhesive known as a coating composition to be applied to the web or raw paper stock in the manufacture of colored paper for printing uses. An objective of those preparing coating compositions is to secure a homogeneous composition wherein each particle of pigment is surrounded by the adhesive, such as starch, and the resulting coating composition free of agglomerates. The application describes prior art methods of preparing coating compositions as requiring "cutting" the adhesive material (such as casein, alpha protein, starch, etc.) in a steam jacketed tank equipped with slow speed paddle agitators for stirring. The pigments are dispersed in water in a second tank similarly provided with paddle agitators. Such mixing is stated by the appellants to depend on the shearing action of the pigment particles over each other. The low rate of shear obtained does not achieve rapid mixing or a full disintegration of agglomerates. The adhesive is mixed into the pigment slurry in a third mixing unit. "In all coating preparation systems of this type," state the appellants in their application, "auxiliary screening and/or filtering equipment are [sic] required for the mixed coatings, and even with these, small agglomerates of pigment and/or adhesive often appears [sic] on the coated paper."

Appellants' apparatus consists of a mixing chamber with funnel-shaped sides and a submerged high-speed stirring unit. The material to comprise the coating composition is placed in the mixing chamber, drawn off through a conduit at the bottom into a high speed dispersion unit, and forced from that unit in small pipes through a rapid heat transfer unit where the adhesive is cooked as the composition passes through the unit. The material may either be drawn off for use or returned through the continuous conduit system to the mixing chamber to repeat the processing cycle. The high speed dispersion unit consists of a circularly shaped channel or circular cross-section with a high speed rotor positioned so that its notched or pocketed periphery encroaches within the inner circumference of the circular channel. As the rotor spins, the mixture is drawn from the mixing chamber and as it courses through the narrow restricted passage of the circular channel it is subjected to centrifugal force which thrusts the particles of pigment and adhesive in the mixture against the circular sides of the channel. Simultaneously, the edge of the rotor impels particles of matter striking its whirling surface in a direction variant to the line of centrifugal force. This is believed by the appellants to impart a whirling effect to those particles and they return in their trajectory to the rotor surface where they are again impelled forward to repeat the cycle. The peripheral speed of the impeller

is of the order of 3500–3600 feet per minute. The material is thus subjected to high shearing and centrifugal forces. The composition is forced from the dispersion unit through a conduit which coils through a steam chamber. This is the heat exchanger where the composition is "cooked." The appellants assert that very high solid-content compositions may be secured by their process and apparatus, as high as 75% solid-content having been obtained. The compositions prepared by their process and apparatus are stated to be "free of any agglomerates of pigment or adhesive." Whereas a mixing time of from two to three hours is said to have been required by prior art methods, a dispersion time of 10 minutes with a like time for cooking yielded by one formula an agglomerate-free mixture of 65% solid-content. By another formula, the enzyme conversion of starches in the presence of pigments and other materials was made in 40 minutes to yield a 65% solid-content coating composition.

The following claims are illustrative:

"24. An apparatus for preparing coating composition comprising, a mixing vessel; a heat exchanger; and a high speed dispersion means for withdrawing the material from the mixing vessel, dispersing the material and forcing the material through the heat exchanger, said dispersion means including a substantially circular channel of rotor with a periphery extending into the said channel."

"26. A process of preparing mineral coating composition comprising, introducing into a container a selected quantity of starch, protein, pigment, and water; continuously withdrawing the material from the container; applying high shearing and centrifugal force to the mixed material at the same time while the material is passing through a restricted passage, and then heating the moving material to a cooking temperature."

The examiner rejected claims 24 and 25, holding that they specify an aggregation of a dispersion means, a mixing vessel, and a heat exchange means with each of the elements accomplishing its individual function independently of the other elements. He commented that if there were any invention in the particular dispersion means, it should be claimed *per se* rather than in alleged novel combination with the other elements. When the case was before the Board of Appeals, it concluded that the apparatus claims "appear to be aggregative." It held that none of the elements modified the action of the other because each performed its own function in its own way.

Claims 24 and 25 were not in the application as originally filed. They were substituted for original claims 4 and 5 and added by an amendment dated May 12, 1945, to place the case in better condition for appeal, following an examiner's action on April 21, 1945, rejecting claims 4 and 5 on cited art. The examiner's letter of August 29, 1945, stated that should claims 24 and 25 be entered, they would be rejected as specifying an aggregation. No art was then cited; likewise, the Examiner's Statement filed after the appeal was taken to the Board of Appeals cited no art. The Board of Appeals, after agreeing with the rejection on the ground of aggregation entered into a consideration of the art which we have mentioned as having been cited in early actions, but not after claims 24 and 25 were added to the case. McGougan et al. for example had been cited against claims 4 and 5; Auspitzer against claim 18. Claims 4 and 5 were rewritten as claims 24 and 25, and claim 18 cancelled in favor of claims 24 and 25.

McGougan et al. disclose an emulsifying apparatus consisting of a supply hopper, a mixing apparatus wherein the mixture to be emulsified courses through a confined area within which intermeshed toothed rotors revolve, and a discharge conduit. McGougan et al. teach that a heating element may be fitted around the funnel portion of the supply hopper to bring the mixture to the proper temperature for emulsification.

Auspitzer describes a method and apparatus for comminuting solids which consists of passing the material to be treated through a system consisting of a storage vessel, a pump, and a "disintegrator," connected by pipes. The pump forces the slurry from the vessel into the disintegrator where within a confined area the slurry is

beaten by a rapidly whirling wheel to which is attached slim transversely positioned rods or fingers which pass between similar rods projecting from the inner sides of the disintegrator chamber. The slurry moves in the system slowly and thus with relation to the rapidly whirling wheel of the disintegrator, the particles of the solid being comminuted are flayed into a colloidal state.

Calcott et al. are concerned with the production of dispersions and employ a system consisting of two supply chambers, one to contain the material to be dispersed, the other, the dispersion medium, a Y-tube leading from there to a mixing chamber, a conduit connected from the bottom of the mixing chamber to a pump which draws the mixture from the mixing chamber and forces it at high speed [at a velocity sufficient to produce turbulence] through a tube of narrow bore which may be heated in order to maintain the material to be dispersed in a liquid state, suitable for the emulsification of the mixture, while the shearing action on the particles of matter to be dispersed by the narrow turbulence tube accomplishes the dispersion of the solid or liquid into colloidal particles.

The board cited McGougan et al. as disposing a supply container, mixing apparatus, and heat exchanger; Calcott et al. to show a mixing vessel, dispersion means, and heat exchanger; and Auspitzer, to show a third form of mixer which could be used in lieu of the mixing or dispersion means of McGougan et al. or Calcott et al. In each of McGougan et al. and Calcott et al., said the board, "the chamber, mixer and heat exchanger, each performs its separate function as do the corresponding elements of appellants' claimed device." The McGougan et al. patent contained one claim, drawn to the apparatus. Calcott et al. contained process claims.

The board cited In re Appelburg, 37 F.2d 620, 17 C.C.P.A. Patents 820, in support of the rejection. There the application described a flashlight lamp with an enclosed thermostatic switch. Every material element of the lamp was fully disclosed in the references. Appellants there contended that their device was patentable because it was a new combination of old elements producing new results. The court, however, held that it was not a patentable combination, produced no result greater than the sum of the results of the components, and laid down the rule that where a number of elements, each of which produces a known result when functioning separately, are brought together so that the sum total of their individual results only is produced by their combination, their union is an aggregation and not patentable.

Appellants here secure more than the aggregate of the individual results of their elements. Their dispersing unit draws the mixed matter from the mixing chamber and immediately subjects it to the high shearing and centrifugal forces produced by their dispersion unit, and forces it while so dispersed through the coiled conduit of the heat exchanger. The material is kept in motion and the effect is distinctly different than if the dispersed material were emptied into a vat to be cooked. The unique quality of appellants' device seems to be that they take a material and handle it through all the necessary phases of its preparation while it is moving through confined areas, and subject to either the drawing, dispersing, or expelling action of the dispersion means. They draw it while in the state of being mixed (from the "mixing" vessel) into a unit where it is subjected to very high shearing forces occasioned by a unique juxtaposition of opposed vectors in a confined circular passage which itself enhances the shearing effect of those forces, and while thus turbulently dispersed, the material is forced through relatively narrow pipes coiled in a steamheated chamber. The material has no opportunity to revert to its former status because throughout the process it is kept and handled in the agitated state most desirable in procuring the pronounced and beneficial result of a coating composition completely free of all agglomerates. While each element does not modify the operation of the others, the material being worked on is, because of the combination of elements, affected in a different manner than if it were merely subjected successively to three independent steps. We believe it can be said that the effect each element produces

on the material is modified by and because of the operation of one or both of the other elements. Such a union of elements may be a combination for there is actually an interdependence of function so far as the effect on the material being processed is concerned. Admittedly, as the patents referred to by the board illustrate, supply containers, mixing apparatus, and heat exchangers have been used in the past. The fact that appellants have used such elements in combination does not of itself render their apparatus patentable or unpatentable. Where, however, they secure, as their specification indicates, a vastly improved result in a new and efficient manner, invention may be present. Levin v. Coe, 76 U.S. App.D.C. 347, 132 F.2d 589. Actually, we do not believe the record establishes that appellants' *dispersion means* is old. Their juxtaposition of acoterminous vectors within the circular confined passage of the dispersing unit seems to us to be novel, and the other elements of the combination appear to be calculated to realize and exploit the fullest benefit of the high rate of shear imparted to the particles of pigment and adhesive by that centrally disposed unit in the apparatus. Even though a marked improvement—a new and useful result—is achieved, the inquiry must be made as to whether the combination is the result of that uncommon talent we call invention, or merely the product of one skilled in the art and led by an average imagination. Abbott Machine Co. v. Universal Winding Co., 1 Cir., 1943, 137 F.2d 166; Standard Oil Development Co. v. Marzall, D.C.Cir., 181 F.2d 280. We think, for all the record shows, that the appellants' dispersion means may be an invention. Assuming that it is, may appellants be allowed claims drawn to the combination in which the dispersion means is used? It is old to have combinations of supply or mixing vessels, dispersing or mixing means, and heat exchangers for the production of dispersions. McGougan et al. and Calcott et al. are illustrative of that fact. Appellants have, we believe, improved one of the elements of that combination. But their dispersion means, which we consider an improvement over the mixing device of McGougan et al., ought not

be claimed in combination with the other elements. The appellants may not by improving one element of an old combination whose construction and operation is otherwise unchanged claim the combination with the improved element substituted for the old. Bassick Mfg. Co. v. R. M. Hollingshead Co., Rogers v. Alemite Corp., 298 U.S. 415, 425, 56 S.Ct. 787, 80 L.Ed. 1251. The other old elements perform no new function in appellants' claimed apparatus, different than they perform in Calcott et al. or McGougan et al. Calcott et al. particularly is illustrative of the combination of supply container, dispersion means, and heat exchanger where the material is heated while being moved in a state of high dispersion. Appellants may have improved the dispersion means but the other elements operate in the same way and in the same relation to it as they do to the dispersion means in Calcott et al. An improvement of one part of an old combination does not entitle the applicants to claim that improvement in combination with other old parts which perform no new function in the combination. Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008. The improved results achieved by appellants' apparatus seem to us to be due primarily to their novel dispersion means and not to any new or patentable cooperation between the elements of the combination of which it is a part. Thus, they are not entitled to patent claims drawn to the combination. In re Reed, 76 F.2d 907, 22 C.C.P.A. Patents 1182. The examiner was correct when he held that the dispersion means, if it was inventive, should be claimed *per se* and not in combination with a mixing means and a heat exchange means. In re Trier, 163 F.2d 575, 35 C.C.P.A. Patents 701, 705.

Turning now to the process claims, 26, 27, and 28, we find that they were rejected by the examiner as lacking invention over Hughes et al. or Coleman in view of the publication, *Paint Manufacture*. The board upheld that rejection.

Claim 26 provides for:

(1) Placing starch, protein, pigment, and water into a container;

(2) Continuously withdrawing the material from the container;

(3) Applying high shearing and centrifugal force simultaneously to the material while it passes through a restricted passage;

(4) Heating the moving material to a cooking temperature.

Hughes et al. teach a process of manufacturing coating compounds consisting of finely divided pigment and adhesive casein. They start with a slurry of the pigment, such as calcium carbonate, into which are mixed small quantities of an adhesive such as casein, starch, or "Alpha Protein," dispersing the calcium carbonate. That composition is then mixed from one to five hours in a ball, tube, pebble, or colloid mill, so as to impart a stress or mechanical force to the particles of pigment. Additional adhesive is then stirred into the mixture to give it desired properties.

Coleman is concerned with the production of an improved coating composition of zein (a proteid found in Indian corn, similar to gluten). He teaches that while prior art zein coating compositions used substantial amounts of water, stable liquid coating compositions of controlled gelling characteristics can be prepared from zein through the use of *anhydrous* solvents. Among the solvents used by Coleman are diethylene glycol, triethylene glycol, propylene glycol, diacetone alcohol, benzyl alcohol, anhydrous denatured alcohol, methanol, glycerine, and dichlorethyl ether. Certain of the solvents he uses alone, and others he combines to produce a mixed solvent. He uses the solvent to dissolve the zein and thereby form the desired coating composition. The proportion of solvent used is critical. The composition may be used as a coating on paper and may include fillers such as starch and pigments. Any suitable color may be imparted to the composition by the use of pigments or dyes. To prepare such a composition, Coleman teaches mixing the dissolved zein with the desired pigments including fillers (which would include starch) by means of a mill, such as a ball mill. Coleman's basic process, mixing the zein with the solvent, requires the application of heat while the mixture is stirred in a vessel.

The article in *Paint Manufacture* entitled "Paint Making Machinery" by N. M. Maas, contains the following:
*"Emulsifiers.*

"In some processes emulsification is required and the paint is then passed through emulsifiers. All these machines, of which there is a great variety, embody the principle of centrifugal action combined with the forcing of the material through narrow passages or apertures, thus imposing a shearing action."

The Patent Office tribunals held that Hughes et al. and Coleman taught the use of the same materials as appellants, and that each of the references called for cooking the mixture. The tribunals below each felt that the quoted matter from the publication was equivalent to a teaching of the desirability of using simultaneously high centrifugal and shearing forces to disperse the solids in the mixture. The board viewed appellants' process additionally as the selection of a composition old in the art, subjecting it to independent steps old in the art, and securing a mere aggregate of their respective results. On the authority of In re Appelburg, supra, the board held the process claims to be unpatentable.

We disagree with the tribunals of the Patent Office on several matters of fact.

1. Both of the basic patents do not, contrary to the decisions below, disclose the materials used by appellants. Claim 26 calls for starch, protein, pigment, and water. Hughes et al. disclose those materials, but Coleman discloses zein (starch), and pigments, but no water as a material element. He does not disclose protein formally except as it might be implied in the use of zein. He does not teach the use of water as a basic element of his mixture—indeed Coleman is concerned with preparing coating compositions substantially free of water. Thus, he uses anhydrous, nonaqueous, solvents. They may contain as much as 5% added water, but, as Coleman states, use "preferably less."

2. Hughes et al., who use the materials appellants use, unlike appellants, do not

teach the step of cooking the mixture. Furthermore, Hughes et al. add most of the adhesive after the milling step. Coleman's process does require the application of heat to the mixture while it is being stirred. The tribunals below found that both references provided for cooking the mixture. In this they were in error.

3. The examiner and the board considered that the publication constitutes an adequate disclosure of subjecting the composition to simultaneous shearing and centrifugal forces. The publication speaks of centrifugal action "combined" with forcing material through narrow passages or apertures. "Combining" in our view is not "juxtaposing." The publication refers to driving fluid compositions by centrifugal force through tiny openings. The centrifugal force comes first. Then as the composition is forced through small apertures or narrow passages, the impinging of the solid particles in the mixture upon the edges of the opening imposes a shearing action on the particles of matter in the composition. This is sequential, not simultaneous. Appellants' dispersion means on the other hand, imparts centrifugal force to the mixture while high shearing forces are simultaneously created as the pocketed rotor bites into the liquid coursing through the restricted circular passage and hurls it again and again in a trajectory opposed to the vector of the centrifugal force. Thus the mixture is urged simultaneously by acoterminous lines of force which compounds the shearing action of each. The circular restricted passage abruptly changes the resultant course of the composition intensifying thereby the high rate of shear imposed upon the solid particles in the mixture. This we believe to be implicit in the appellants' dispersing means. The shearing and centrifugal forces continue throughout the course of the mixture in the restricted passageway of the dispersion means. The mixture is maintained in the condition best calculated to preserve the solids therein in dispersion as the mixture is forced in a narrow conduit through a steamheated chamber the heat of which "cooks" the composition as it courses through the conduit.

We do not agree with the board that each of appellants' steps is disclosed in the art cited. From what has been said, it appears that neither Hughes et al. nor Coleman teach the step of "continuously withdrawing the material from the container"; we have seen that the publication does not anticipate the step of simultaneously applying high shearing and centrifugal forces to the material; and neither of the references discloses heating the *moving* material to a cooking temperature. Hughes et al. do not teach cooking the material at all, and Coleman does his heating in a mixing vessel. Appellants' process is inventively distinct from the combination of references cited. It is a process which brings into cooperation the steps of mixing in a container, continuously drawing off the mixed material, dispersing it through the action of great shearing and centrifugal forces applied simultaneously in a restricted passage, and cooking that material while moving agitatedly in a channel. The rejection of claims 26, 27, and 28, drawn to this process, on the references cited, was error. The citation of In re Appelburg, supra, by the board is inappropriate. The references do not suggest doing what appellants do in their process, and there is a sufficient and necessary relationship between appellants' steps to negative the board's view that they are merely independent. The appellants secure their improved results, in our view, because their union of steps produces a result greater than their mere aggregate if each step were performed independently.

The apparatus claims must fall, but those drawn to the process may stand despite the board's rejection. The board's decision is modified accordingly; the rejection of claims 24 and 25 is *affirmed,* while that of claims 26, 27, and 28 is *reversed.*

Modified.