**OXNARD CANNERS, Inc. et al. v. BRADLEY.**

No. 12931.

United States Court of Appeals Ninth Circuit.

Feb. 18, 1952.

J. E. Trabucco, San Francisco, Cal., for appellant.

Mellin, Hanscom & Hursh, Oscar A. Mellin, Leroy Hanscom, Jack E. Hursh, all of San Francisco, Cal., for appellee.

Before MATHEWS, BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

In issue here is the validity and infringement of United States Patent No. 2,477,168, for a machine used in the fish canning industry for automatically eviscerating Monterey sardines. The patent was issued to appellee Thomas H. Bradley on July 26, 1949.

Bradley brought this suit against Oxnard Canners, Inc. (Oxnard) and James L. Smith for alleged infringement. The district court for the Northern District of California, Southern Division, on a jury verdict, adjudged Claim 1 (the only claim in issue in the trial court and here) of the Bradley patent valid and infringed, and that appellee recover from appellant Oxnard $280.59 and from appellant Smith $10.00.

Claim 1 reads as follows: "1. Apparatus of the character described comprising a vessel adapted to hold a vacuum and having a suction port, a continuous fish conveyor having uniformly spaced fish holding means and so disposed as to convey fish to and past a suction station in alignment with said suction port, a rotatable disc valve disposed between said suction station and suction port and having a plurality of uniformly and circumferentially spaced valve ports so disposed as to register with said suction port, means for moving said conveyor, means for rotating said disc valve and means for synchronizing said moving and rotating means so as to register a valve port with said suction port when a fish is at said suction station."

Prior to appellee's invention of his machine, the common practice in preparing sardines for canning was to behead the fish and pass them through eviscerating machines. Because such eviscerating devices were only 50% to 60% effective, it was then necessary to inspect each fish individually by picking it up and examining it before hand packing it into cans. Although this procedure was cumbersome and expensive and prevented mechanical packing into cans, it was the only technique known to the industry which would guarantee the 95% eviscerating efficiency required by the California State Board of Health.

Many unsuccessful attempts were made to produce an eviscerating machine which would produce the requisite results, but it was not until 1944 when appellee constructed a machine embodying his invention that such a machine passed the test of commercial acceptability.

Appellants' first specification of error lies in the contention that there was no evidence to support the verdict of the jury on the issues of validity and infringement. In testing the sufficiency of evidence to sustain a verdict in favor of plaintiff, the evidence and all reasonable inferences deducible therefrom must be con-

sidered in the light most favorable to plaintiff and any conflict in the evidence must be resolved in favor of the jury's findings. Where a jury, under instructions against which no·complaint is made, finds for the plaintiff, plaintiff is entitled on appeal to have considered as true all evidence which was offered upon controlling issues and were entitled to all inferences reasonably to be drawn therefrom. Zarek v. Fredericks, 3 Cir., 138 F.2d 689, affirming D.C., 49 F. Supp. 65.

We therefore look at the evidence on the issues of validity and infringement. Uncontradicted testimony of appellee Bradley shows that prior to 1944, (the year that Bradley's machine was first installed in a plant) eviscerating devices then used did not meet state requirements. Hand inspection of each fish was then necessary. This inspection precluded the use of any mechanical packing machine. When, in 1944, appellee produced a machine embodying his invention and placed the same in operation in a Monterey cannery, it not only removed at least 95% of the fish viscera, but did so at the rate of 180 fish per minute, thus enabling the fish to be mechanically packed into cans. That the production of such a machine as appellee's was a boon to the industry is clearly indicated by the testimony of Joseph Benossi, the superintendent of a fish packing company not involved in this litigation.

"Q. In connection with when these machines are used with packing machines that put the fish in the cans by machinery rather than by hand, is there a saving in the packing cost there? A. That is the reason we bought this machine, because there is a certain amount of saving.

"Q. Can you approximate what that saving is per case? A. Well, I would say around thirty or thirty-five cents."

It is also undisputed that without such an efficient eviscerating machine mechanical packing machines are valueless and of no practical use in the industry.

Prior to the construction by appellee of the patented eviscerator in suit, appellant Smith had a can filling machine for mechanically placing fish in cans. Because it was minus an eviscerator, it had no practical value and was never produced commercially. Shortly after appellee produced and installed his machine in a cannery at Monterey, California, Smith (and his associates) commercially produced their can filling machine to which they added an eviscerator. By the start of the 1946–1947 fish packing season many of the sardine canners in Monterey had purchased these machines from Smith and his associates and installed them for use.

On the question of infringement, the record discloses the following evidence in support thereof. Appellee Bradley testified on direct examination:

"Q. Would you tell us the similarities, if any, and the differences, if any, between a machine such as illustrated by the model Exhibit 7 [accused machine] for identification and Exhibit 6 [appellee's machine]? A. There is no difference.

\* · \* \* \* \* \*

"Q. I notice that that valve in Exhibit 7 lies in a horizontal plane rather than a vertical plane as illustrated in Exhibit 6. Does that change the mode of operation of the valve? A. No, sir; not at all; I could have put the holes in the side of that as well as they did here.

"Q. In other words, then, I understand you to say then it is a matter of position only? A. That is all."

Joseph Benossi made these observations:

"Q. During the time that they had this vertical valve on it, would you state whether or not the machines operated satisfactorily? A. They did.

"Q. Did they operate satisfactorily after they put the horizontal type of valve on? A. Yes.

\* \* \* \* \* \*

"Q. Did you notice any difference in the operation between the machines when they had the vertical valve and the horizontal valve? A. Not a difference.

"Q. And would you state whether or not, except for the position of the valves, vertical or horizontal, from your observation, is there any difference in mechanical

operating principle? A. The only difference you have is that one is horizontal and one is vertical, to my knowledge.

"Q. And from your observation do they work equally as well? A. Correct."

The transposition of parts of a machine does not avert infringement, where the parts changed continue to perform the same respective functions after the change as before. Walker on Patents, Deller's Edition, 1951 Cum.Supp. § 463, p. 1699; Vallen v. Volland, 8 Cir., 1941, 122 F.2d 175; Montgomery Ward & Co. v. Clair, 8 Cir., 1941, 123 F.2d 878; Bianchi v. Barili, 9 Cir., 1948, 168 F.2d 793. See also Smith v. Mid-Continent Investment Co., 8 Cir., 1939, 106 F.2d 622.

Appellant further contends that the patent issued to appellant Smith carries with it a presumption of non-infringement of the patent in suit, which presumption has not been overcome by appellee. The jury was of a contrary opinion. The trial judge also indicated disagreement with this contention. In denying appellants' motions for judgment notwithstanding the verdict and for a new trial he said:

"As to the question of infringement, I am satisfied that there isn't any question about the correctness of the jury's verdict.

"Whatever presumption might attach, in my opinion, to the issuance of the patent by the Patent Office to Smith gives way to the evidence, which I think justified the jury in concluding that there was actual infringement by the defendant's device. If I were deciding that factual question, I would have decided in favor of the plaintiff too."

Because we agree with the jury and the trial court, we refrain from quoting the evidence since we think that it fully dissipates such a presumption.

Appellants also urge anticipation by prior inventions. Questioned on this issue Appellant Smith said:

"Q. Now in these various devices shown in the prior art, it is true, is it not, that they do not show the same construction as we have here? A. Yes."

Both appellee Bradley and witness Benossi testified that the operation of appellee's device was not, in any fashion, akin to that shown in prior art devices referred to as Gray, Kurzbin, and Abbott. Nor was the construction anywhere comparable. As to a McGrew patent, contended by appellant to have anticipated appellee's invention, the only evidence on the subject was elicited from Smith. And such evidence, from this appellant himself, establishes that the Mc-Grew machine is totally unlike the Bradley (or Smith) machine in mode of operation, construction, and result.

"Q. And not having that [a valve], the McGrew patent fails to operate satisfactorily? A. It probably does."

The other patents which appellant originally contended constituted prior art anticipating the Bradley patent where Hauber, Gray, and Fleischer. In its instructions to the jury, the trial court removed these patents from consideration in the following language: "In considering what has gone before, I should tell you that you are not to take into account either the Hauber patent on the board, the Fleischer patent, or the Gray patent No. 1,689,670, as, without objection, it has been considered that those three are not necessary to be considered by the jury in determining the question of the validity of the patent."

As this court observed in Bianchi v. Barili, supra [168 F.2d 795]:

"Before a patent can be declared invalid because of anticipation, its lack of novelty must be established beyond a reasonable doubt. Cantrell v. Wallick, supra, 117 U.S. [689] at pages 695, 696, 6 S.Ct. 970 [29 L.Ed. 1017]; 1 Walker § 63, pages 300–303; American Bell Telephone Co. v. People's Telephone Co., C.C.N.Y., 22 F. 309, 313, affirmed, 126 U.S. 1, 572, 8 S.Ct. 778, 31 L.Ed. 863; Searchlight Horn Co. v. Victor Talking Machine Co., D.C.N.J., 261 F. 395, 401.

"Particularly heavy is the attacker's burden when the validity of the patent has been sustained by court findings. General Motors Corp. v. Kesling, 8 Cir., 164 F.2d 824, 827, certiorari denied on March 15, 1948,

333 U.S. [855], 68 S.Ct. 732 [92 L.Ed. 1135], and the many cases there cited."

■ Appellants contend that appellee's and appellants' patents, prior art, and infringement should *all* have been determined by the court as a matter of law, rather than submitting these questions to the jury. It is true that this court has recognized the rule that infringement may pose a legal rather than a factual question where, with all the evidence before the court, it appears that no substantial dispute of facts is presented, and that the case may be determined by a mere comparison of structures and extrinsic evidence is not needed for purposes of explanation, or evaluation of prior art, or to resolve questions of the application of descriptions to subject matter. United States v. Esnault-Pelterie, 303 U.S. 26, 30, 58 S.Ct. 412, 82 L.Ed. 625, and cases cited therein. See also Nicholl, Inc., v. Schick Dry Shaver, 9 Cir., 98 F.2d 511, 513. The grounds for invoking such a rule, however, are absent here.

■ It is too late in the proceedings for appellants to here urge that these matters should have been determined by the court. No such contention was advanced below and no exceptions were taken to the instructions of the court submitting these questions to the jury. In effect, appellants would have this court substitute itself for the jury by re-evaluating the evidence. This court has previously held that issues of the character here presented are questions of fact. See Faulkner v. Gibbs, 170 F.2d 34; Id., 338 U.S. 267, 70 S.Ct. 25, 94 L.Ed. 62 and cases cited therein.

■ In addition to the foregoing contentions, appellants also argue that the claim in suit is void not only because all the elements of the claim are old, but also because the claim embodies in conjunction several distinct units of invention. This fact question was properly resolved by the jury under appropriate instructions which contained a minimum of technical verbiage, and were marked by succinctness and lucidity. No objection was taken to any of the instructions, so we are not compelled, at this late stage, to consider any error occurring therein. The jury's verdict was supported by substantial evidence and was not clearly erroneous.

■ Aside from that it is well settled that a combination of old elements which form a machine having a new modus operandi and which produces a new or improved result is patentable. R.S. § 4886, 35 U.S.C.A. § 31; Cantrell v. Wallick, 1886, 117 U.S. 689, 6 S.Ct. 970, 29 L.Ed. 1017. "With respect to the result produced, it is not essential that it be a wholly new result, but it is sufficient if an old result is effected in a more facile, economical, or efficient way." Independent Oil Well Cementing Co. v. Halliburton, 10 Cir., 1932, 54 F.2d 900, 905, certiorari denied 286 U.S. 544, 52 S.Ct. 496, 76 L.Ed. 1281, and cases cited therein. See also Levin v. Coe, 1942, 76 U.S.App.D.C. 347, 132 F.2d 589, 596; Application of Barrett, 1950, 182 F.2d 626, 630, 37 C.C.Pa., Patents, 1073.

We have examined the other contentions advanced by appellants and find them to be without merit. The judgment is affirmed.